Stewart, J.
 

 As the present case comes to us, we take it as settled that there was an oral contract made-
 
 *432
 
 between plaintiff and Harper on January 1, 1944, whereby Harper agreed to leave, by will, one-half of his estate to plaintiff in consideration of her continuing to live with him and continuing to render the services which she was then performing. Although the making of the contract was denied in the answer in the Court of Common Pleas, both that court and the Court of Appeals held that the evidence established the existence of the contract. .Likewise, the defense in the answer, that plaintiff had elected a remedy of a claim for money by filing her verified claim with the administratrix in which plaintiff stated that she was entitled to either one-half of Harper’s estate or the net value of one-half thereof, which she claimed was $150,000, has not been seriously urged., and in the view we have taken it is not essential for us to pass upon that question. The sole question before us, therefore, is whether plaintiff can enforce her contract against defendants in the face of Sections 8620, 8621 and 10504-3a, General Code.
 

 It is conceded for the purposes of the present case that there was no agreement, or memorandum thereof, in writing concerning the contract between plaintiff and Harper, and that Harper died intestate.
 

 Section 8620, General Code, reads:
 

 “No lease, estate or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned, or granted except by deed, or note in writing, signed by the party so assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by ;act and operation of law.”
 

 , Section 8621, General Code, provides:
 

 “No action shall be brought * * * upon a contract, or sale of lands, tenements, or hereditaments, or interest in, or concerning them, * * * unless the agreement
 
 *433
 
 upon which such action is brought, or some memorandum or note thereof, is in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized.”
 

 These sections appear in the chapter of the Code designated ‘‘Statute of Frauds and Perjuries.” Both sections were enacted February 19, 1810 (29 Ohio Laws, 218), and, with no substantial changes so far ■as the matters with which, we are concerned, have remained as the law of Ohio until the present day.
 

 Under the wording of these sections it would appear that plaintiff could not maintain her action because ■her agreement with Harper did contemplate a contract for an interest in lands, and, indeed, in the very earliest •cases decided by this court, it was held that the statute ■of frauds constitutes a rule of evidence and that partial performance would not take an oral contract out •of the operation of the statute.
 
 M’Coy
 
 v.
 
 Skinner
 
 (1816), 1 T., 69;
 
 Lenington
 
 v.
 
 Campbell
 
 (1817), 1 T., 105. However, this court very early departed from that doctrine and held as to agreements to convey or lease, where there had been a delivery of possession, that such delivery would remove the oral contract from the operation of the statute.
 
 Wilber
 
 v.
 
 Paine
 
 (1824), 1 Ohio, 251;
 
 Waggoner
 
 v.
 
 Speck
 
 (1827), 3 Ohio, 292;
 
 Moore
 
 v.
 
 Beasley
 
 (1827), 3 Ohio, 294;
 
 Bridgmans
 
 v.
 
 Wells
 
 (1844), 13 Ohio, 43;
 
 Kelley
 
 v.
 
 Stanbery
 
 (1844), 13 Ohio, 408.
 

 That delivery of possession will take an oral, contract concerning lands out of the statute of frauds has been consistently held by this court since the case of
 
 Wilber
 
 v.
 
 Paine, supra. Bumiller
 
 v.
 
 Walker,
 
 95 Ohio St., 344, 116 N. E., 797, L. R. A. 1918B, 96. Such delivery of possession must be referable to the contract.
 
 Armstrong
 
 v.
 
 Kattenhorn,
 
 11 Ohio, 265;
 
 Crawford & Murray
 
 v.
 
 Wick,
 
 18 Ohio St., 190, 98 Am. Dec., 103.
 
 *434
 
 However, as consistent as this court has been in holding that delivery of possession removes an oral contract from the statute of frauds, it has been just as consistent in holding that the payment of the consideration is not sufficient to take such a contract out of the statute
 
 (Sites v. Keller,
 
 6 Ohio, 483;
 
 Pollard
 
 v.
 
 Kinner,
 
 6 Ohio, 528), and this is just as true where the consideration consists of personal services
 
 (Hodges
 
 v.
 
 Ettinger,
 
 127 Ohio St., 460, 189 N. E., 113).
 

 With reference to contracts or agreements to make a will, this court held in
 
 Howard
 
 v. Brower, 37 Ohio St., 402, that where the agreement is in reference to land or money it is within the statute of frauds, in
 
 Crabill
 
 v.
 
 Marsh,
 
 38 Ohio St., 331, one Nathan Marsh promised Nancy Marsh, his daughter-in-law, he would deed or will to her the major part of his property if she would live with him. He failed to either deed or will his property as agreed and after his death Nancy Marsh, having fulfilled her agreement, brought an action for damages. This court held that the promise was rendered unenforcible by the statute of frauds.
 

 In the case of
 
 Shahan, Exr.,
 
 v.
 
 Swan,
 
 48 Ohio St., 25, 26 N. E., 222, 29 Am. St. Rep., 517, this court held that an oral contract to make a will which concerned both real and personal property was indivisible and, therefore, was within the statute of frauds.
 

 In the case of
 
 Kling, Admr.,
 
 v.
 
 Bordner,
 
 65 Ohio St., 86, 61 N. E., 148, paragraph four of the syllabus reads:
 

 “A verbal agreement to leave real property to another by will, or otherwise, in consideration of personal services to be rendered by the latter, is within the statute of frauds, and void; and the payment of consideration by rendering the services is not such performance as will take the agreement out of the operation of the statute.”
 

 It would seem from the cases decided by this court
 
 *435
 
 that plaintiff had no cause of action upon her agreement with Harper, for the reason that there was no memorandum in writing and that the consideration furnished by plaintiff consisted of persona] services. However, plaintiff claims that she is not bound by the rule of
 
 Kling, Admr.,
 
 v.
 
 Bordner, supra,
 
 because of two statements by this court.
 

 The first statement is the following obiter of Judge Bradbury in the case of
 
 Shahan, Exr.,
 
 v.
 
 Swan, supra,
 
 40:
 

 “Notwithstanding that it is the established rule in Ohio that the payment of the consideration, even in the personal services of the party seeking relief, does not ordinarily constitute such part performance as will take a case out of the operation of the statute of frauds, we do not wish to be understood to hold that cases may not arise wherein specific performance of a contract in parol'may be had on the ground that the consideration had been paid in personal services, not intended to be, and not susceptible of being measured by a pecuniary standard.”
 

 The second statement is the syllabus in the case of
 
 Newbold
 
 v.
 
 Michael,
 
 110 Ohio St., 588, 144 N. E., 715, which syllabus is:
 

 “Equity will not enforce by specific performance a verbal contract to leave an estate, including real and persona] property, to another by will, in consideration of personal services, even though the same have been performed, and said contract and performance are shown by clear and convincing evidence, unless the character of the services were not intended to be and are not susceptible of being measured by pecuniary standard, or unless the contract has been so far executed that a refusal would operate as a fraud upon the party who has performed and would result in a denial of just compensation.
 
 (Kling
 
 v.
 
 Bordner,
 
 
 *436
 

 Admr.,
 
 65 Ohio St., 86, 61 N. E., 148, approved and: followed.)”
 

 It is interesting to note that in the
 
 Newbold
 
 v.
 
 Michael case
 
 there was an oral contract by which Maud: Michael agreed with Joseph Wooley to go to his home,, live with him and care for him and his household,. Wooley agreeing he would provide either by his last will or in some other sufficient manner that Maud. Michael would have and receive all Wooley’s property; and that upon those facts this court held that the services of Maud Michael were such that they could be-compensated in money and that, therefore, the contract was within the statute of frauds.
 

 . In the present ease plaintiff strenuously claims that, the services which she rendered as her consideration for the contract were such as were not compensable in money, and the Court of Appeals, in reversing the-judgment of the Court of Common Pleas, so held.
 

 It is true that plaintiff’s services consisted of hard work and a great variety of tasks, but upon what theory they were not compensable in a pecuniary sense-it is difficult for us to grasp. She was Harper’s housekeeper and did his cooking, cleaning, canning, laundry, and all the things which go with that kind of position. It is to be observed that the cooking, cleaning, canning and other work were done for herself and her children as well as for Harper, but assuredly it is a fact that such services are being performed in innumerable instances all the time and are being paid for either upon a
 
 quantum meruit
 
 or contract basis. In addition, plaintiff did secretarial work and went on business errands for Harper, but in hundreds of thousands of homes and offices that is being done every day and paid for by the one for whom it is being done. Her loading of hogs, only one instance of which was testified to, and her occasional driving of trucks, while-
 
 *437
 
 difficult work, are performances such as are being compensated in money upon farms all over America. Truly her acting as chauffeur in driving Harper to places where he desired to go were services having a money value, as witness the tremendous number of paid chauffeurs in all parts of the country. The same observation can be made with reference to the work of plaintiff in taking care of Harper when hé was ill. Practical nurses are being hired and compensated in money in every community in the land.
 

 It is true that plaintiff’s tasks were various and entailed much time and labor, but the mere fact that there were many different tasks and that the evaluation of them would be more difficult than would be the evaluation of a single enterprise or pursuit does not make the tasks any less compensable in money.
 

 Plaintiff argues strenuously that her services are not susceptible of being measured by pecuniary standards because of the fact that Harper liked her and her children and that she and her children liked Harper. She dwells upon the fact that Harper gave her children money and clothes; that he was planning for their education and their future; that he went to Sunday school and church with the children; and that betook them to visit her relatives and had her relatives and friends come to his farm. It seems to us that all these actions did not constitute services by plaintiff to Harper but, on the contrary, constituted favors and kindnesses from Harper to plaintiff and her family and did not in any degree affect the compensability of plaintiff’s services in money.
 

 We know of no rule by which it is necessary for an employer and employee to dislike or hate each other and not to be kindlly and generous toward each other in order for the services of the employee to be monetarily compensable by the employer.
 

 
 *438
 
 In the present case all the testimony is to the effect that the services to be rendered by plaintiff after the agreement of January 1, 1944, with reference to the making of a will, were to continue to be the same as those which she was performing at that time under her 1942 contract of $40 per month and a home with board for herself and her family.
 

 In order for services to be such as are not compensable in money- they must be of a kind which are rendered as a result of a sacrifice by the one performing them, generally being rendered because of love and affection. There are many cases where a relative or a dear friend leaves his own family, home or position to go to work for the other who needs his services, and the services based upon such sentiment are difficult, if not impossible to evaluate in money. As 'was said by Judge Minshall in the case of
 
 Emery
 
 v.
 
 Darling,
 
 50 Ohio St., 160, 167, 33 N. E., 715, “The value of the society of one sister to another is incapable of measurement in money.”
 

 In the present case the only evidence on the matter is that there was no sentiment between plaintiff and Harper and their relationship was strictly on a business basis; and the attorneys for plaintiff insisted that this was a fact. Plaintiff did not give up her home or her family to come to Harper, she advertised for a place and went to work for Harper not only for the money compensation she received but for a home for herself with both her children with her, a status which she had not been enjoying previous to becoming Harper’s housekeeper.
 

 In the cases cited in plaintiff’s brief, where courts have decreed specific performance of contracts to make a will, in almost every instance the person who had performed the personal services had done so at a considerable sacrifice of his own interests.
 

 
 *439
 
 In
 
 Woodworth
 
 v.
 
 Porter,
 
 224 Mich., 470, 194 N. W., 1015, specific performance of a contract to make a will was decreed, without much discussion of the principles of law involved, because of the fact that the one who agreed to make the will lived on a large farm, only a small part of which was fit for cultivation. The farmer, becoming old, leased the farm and some years thereafter the tenant informed the owner that there was so little profit in the lease that he was going to abandon it. The owner of the farm, and mutual friends of his and the tenant, in order to induce the tenant to continue to operate the farm, promised that it would belong to the tenant upon the owner’s death;
 

 The case of
 
 Gladville
 
 v.
 
 McDole,
 
 247 Ill., 34, 93 N. E., 86, was an action to enforce an oral agreement to devise land in return for personal services. In that case Eva Miller (Gladville) was left an orphan when she was 10 years old. Her uncle took her into his home, where she stayed. The uncle, being a very religious man and very strict with Eva, did not wish her to have any social pleasures. She became very unhappy about the restrictions, especially when she was invited by neighbors, and on one occasion when she had assisted in getting up a social affair. When she was about 18, the uncle proposed to Eva that if she would stay with him and her aunt and conform to their views about social life until she was married, she Avould have all the property upon the deaths of her uncle and aunt. She agreed and stayed with her uncle and aunt, performing household and farming duties Avithout compensation, and after her marriage she returned frequently and stayed with them. Several wills were made leaving the property to Eva but were later revoked, and several papers with the aunt’s signature, saying she wanted the property to go to Eva, were found. The court said in its opinion:
 

 
 *440
 
 “Payment of purchase money, alone, will not take the contract out of the statute, for the reason that it can be recovered back, with interest, in an action at law. * * * The same is true of personal services, which can be estimated in money, for which a recovery can be had in law, because the law would in that case afford a sufficient remedy.”
 

 But the court held that Eva had constructive possession and that, considering all the evidence, to refuse to enforce the contract would be fraud upon her.
 

 Cannon
 
 v.
 
 Cannon,
 
 158 Va., 12, 163 S. E., 405, is a ease of a parol contract by which a mother promised that her son should have certain land upon her death if he would furnish her a home and support her until her death. In order to do that plaintiff refrained from another job which he was to take, and worked for, and carried out his agreement with, his mother for a period of 16 years. Specific performance of the contract was ordered, the court to a great extent basing its decision upon the fact that there was no pecuniary way to pay for the services of the son.
 

 Whitney
 
 v.
 
 Hay,
 
 181 U. S., 77, 45 L. Ed., 758, 21 S. Ct., 537, is a case where an old childless couple made a contract to leave a home to a younger couple in consideration of the younger couple becoming members of the older couple’s family. The younger couple gave up their home and moved in with the older couple, furnishing the home of the older people and supporting them. The court said, with reference to the younger husband, that his plans of life were materially altered in order that he might take care of Piper and wife during their respective lives. Piper put Hay in actual possession of the premises for execution of his agreement with Hay.
 

 Bless
 
 v.
 
 Blizzard,
 
 86 Kan., 230, 120 P., 351, is a case in which there was no discussion of the statute of
 
 *441
 
 frauds but iu which the court said that the services rendered and the sacrifices made by the one to whom the promise was made to make the will were such as to be not easily compensable by pecuniary standards.
 

 There was no discussion of the statute of frauds in
 
 Vandiver
 
 v.
 
 Stone,
 
 149 Ore., 426, 41 P. (2d), 247, or in
 
 Weber
 
 v.
 
 Crabill, Admr.,
 
 123 Neb., 88, 242 N. W., 267.
 

 Neal, Admx., v. Hamilton,
 
 159 Md., 447, 150 A., 867, is a case where a grandchild of a man’s wife gave up her position from which she earned $35 to $55 per week, her regular hours, fair wages and freedom from responsibility in exchange for dislocation of her social and family ties, and the surrender of her independence, and undertook to care for such man in pursuance of the contract which she fully performed. The court in allowing recovery stated, at page 451 :
 

 “While the performance of ordinary services will not take an oral contract out of the statute of frauds, if the value of such services can be ascertained with reasonable accuracy in an action at law and adequately compensated by a recovery of damages, yet where it. is impossible to restore the plaintiff to his original position by any legal remedy, the essential condition of equity jurisdiction in case of part performance is fulfilled, and the rendition of the services will take the parol contract out of the statute of frauds.”
 

 Puddy
 
 v.
 
 Sharpe,
 
 248 Mich., 147, 226 N. W., 853, is a case in which Puddy prevailed upon his grandnephew to come from England to take care of Puddy in his old age, and the court enforced an oral agreement by which Puddy agreed to leave his property to his grandnephew because the grandnephew had changed the entire tenor of his life in performing his part of the contract.
 

 Warner
 
 v.
 
 Marshall,
 
 166 Ind., 88, 75 N. E., 582, is a case in which there was a written contract and the
 
 *442
 
 question involved was whether parol evidence could be used to explain the contract. The case involved a niece coming from another state and giving up her home and profession to live with her aunt.
 

 Howe
 
 v.
 
 Watson, Admr.,
 
 179 Mass., 30, 60 N. E., 415, is a ease in which an old lady wrote to her sister living in a distant state and asked the sister to come .and stay with her and take care of her until she died •and that she would leave all her property to the sister. The sister came, a move which necessitated the breaking up of her own home, and the court held that the contract was valid and conformed to the statute of frauds since there was an acceptance of a written offer.
 

 All these cases are entirely different in the facts and in the principles of law which are applicable to them from the present case in which the plaintiff made no sacrifice in coming to Harper, but, on the contrary, gained a salary and a home for herself and family at a time when she had no employment and no way by which her children could live with her. As we have .said, the tasks which she performed so well in Harper's home were as much for her own family as for Harper.
 

 The administratrix strenuously contends that, without regard to the nature of the services performed by plaintiff, she cannot recover because of Section 10504-3a. With full knowledge of the fact that the statute of frauds had been in effect in Ohio since 1810, and after the various decisions of this court in reference to the effect of partial performance of contracts in relation to the statute of frauds, and long after the decision in
 
 Newbold
 
 v.
 
 Michael, supra,
 
 the General Assembly in 1935 (116 Ohio Laws, 404) enacted Section 10504-3a. It reads as follows:
 

 “No agreement to make a will or to make a devise or bequest by will shall be enforceable unless such agreement is in writing, signed by the party making it or by
 
 *443
 
 some other person by his express direction, in which latter case the instrument must be subscribed by two or more competent witnesses who heard such party acknowledge that it was so signed by his direction.”
 

 The administratrix argues that this section is so mandatory in language that, although in certain cases partial performance will take an oral contract out of operation of the statute of frauds, the General Assembly intended by this section that no agreement to make a will shall be enforcible under any circumstances unless the agreement is in writing, and that the statute constitutes a rule of evidence. There is much force to this argument. In the first place, Sections 8620 and 8621, General Code, are in the chapter designated “Statute of Frauds and Perjuries,” whereas Section 10504-3a is in the chapter designated “Wills” and follows directly the section which provides the solemn and formal requisites essential to the making of a valid will. Again, Section 8621, General Code, provides that “no action shall be brought * * whereas Section 10504-3a provides that “No agreement shall be enforceable * *
 

 Section 8621, General Code, provides for the agreement or some memorandum or note thereof to be in writing, whereas Section 10504-3a provides that the agreement itself shall be in writing. Section 8621 provides that the agreement or memorandum or note shall be signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized, whereas Section 10504-3a provides that the agreement shall be signed by the party making it or by some other person by his express direction, in which latter case the instrument must be subscribed by two or more competent witnesses who heard such party acknowledge that it was so signed by his direction.
 

 
 *444
 
 In view of all these circumstances and the further fact that the General Assembly knew that this court had, through the years, applied the statute of frauds to contracts to make a will, it could be persuasively contended that the legislative branch of the government intended, when it enacted this entirely new section, to require, without exception, an agreement to make a will or a devise or bequest by will to be in writing and that unless the agreement were such it would not be enforcible under any circumstances.
 

 It is true that in the case of
 
 Ayers
 
 v.
 
 Cook,
 
 140 Ohio St., 281, 43 N. E. (2d), 287, the second paragraph of the syllabus reads:
 

 “When an interest in a business is sold to two persons, by an agreement in writing, for the payment of a specified amount, and one of the purchasers, as a further consideration for the sale, enters into a contemporaneous oral agreement with the vendors to leave real estate to them by will, a completed transfer of the business with payment of the specified amount, as agreed upon, constitutes such part performance of the contract as a whole as takes the case out of both the general statute of frauds (Section 8621, General Code) which applies to a contract to devise lands and the specific statute of frauds (Section 10504-3u), which relates to agreements to make a will or to make a devise or bequest by will.”
 

 That is a pronouncement by this court that under certain circumstances partial performance can take an oral contract out of the operation of Section 10504-3a, although the
 
 Ayers case
 
 did not involve any question of personal services and did involve a contract entered into prior to the enactment of Section 10504-3a.
 

 Some of the members of this court are of the opinion that what was said with reference to Section 10504-
 
 3a
 
 in
 
 Ayers
 
 v.
 
 Cook
 
 should be re-examined if, in the
 
 *445
 
 ■future, it should become necessary to decide whether .a case can be taken out of the operation of the section. In the present case, however, in view of the conclusion •at which we have arrived, it is not necessary to decide that point now.
 

 After a careful perusal of the record, we hold that, .giving plaintiff the most favorable interpretation of the testimony and disregarding all the evidence offered •on behalf of the defendants, the services which she performed for Harper were compensable in money, and if they were not covered by her original contract 'with Harper she would be relegated to an action in
 
 ■ quantum mermt.
 

 It is the legislative branch of the government which -has declared that an agreement to make a will must, ■be in writing. Although the result may seem harsh to one who has an oral contract and who has performed persona] services in the fulfillment of it, nevertheless, the legislation does prevent the prosecution of unjust and fraudulent claims by those who would wilfully perjure themselves in order to press demands upon estates when the only person wiio could speak the truth with reference to such claims has his lips sealed in death. The weighing of the advantages and disadvantages in such legislation is a legislative and not a .judicial function.
 

 The judgment of the Court of Appeals is reversed and that of the Common Pleas Court affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman, Turner and Taft, JJ.j concur.