**WILLIAMS, Appellant,**

v.

**ORMSBY, Appellee.**

[Cite as *Williams v. Ormsby*, 190 Ohio App.3d 815, 2010-Ohio-4664.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 09CA0085–M.

Decided Sept. 30, 2010.

L. Ray Jones, for appellant.

Michael L. Laribee, for appellee.

Moore, Judge.

{¶ 1} Appellant, Amber Williams, appeals from the judgment of the Medina County Court of Common Pleas. This court reverses.

I

{¶ 2} This matter centers around ownership of the home located at 3349 Hardwood Hollow in Medina, Ohio. Williams originally owned the property, subject to the mortgage, having received it as a result of a previous divorce. In May 2004, appellee, Fredrick Ormsby, moved into the property with Williams. The couple became engaged to be married in July 2004, and Ormsby began making the mortgage payments. Later, Ormsby paid off the remaining mortgage balance of approximately $310,000. In return, Williams executed a quit-claim deed granting to Ormsby full title to the property. On December 15, 2004, Ormsby recorded the deed.

{¶ 3} In January 2005, Williams and Ormsby canceled their wedding. In March 2005, their engagement ended when law-enforcement officers removed Williams from the property pursuant to a restraining order after she and Ormsby had a disagreement.

{¶ 4} On March 24, 2005, Williams and Ormsby executed a contract regarding the sale of the property and allocation of the resulting proceeds between them.

{¶ 5} In May 2005, Williams and Ormsby made attempts to reconcile, including attending couples counseling. Williams refused to move back in with Ormsby unless he granted her an undivided one-half interest in the property.

{¶ 6} On June 2, 2005, Williams and Ormsby executed a second contract regarding the property. The contract made Williams and Ormsby "equal partners" in the property and included, among other things, a provision for disposition of the property in the event that their relationship ended. As a result, Williams moved back in with Ormsby, and the parties eventually resumed their engagement.

{¶ 7} In September 2007, Williams terminated the relationship. For a time, they continued to live in separate areas of the home. In April 2008, Ormsby moved out.

{¶ 8} In May 2008, Williams and Ormsby filed suit against each other in two separate actions. The trial court consolidated the cases. Williams sought specific performance of the June contract or damages stemming from the breach of that contract. Ormsby's complaint does not appear in the record before this court. On November 21, 2008, Williams filed a motion for summary judgment. On December 5, 2008, Ormsby filed a single motion for summary judgment/opposition to Williams's motion for summary judgment. On December 26, 2008, Williams first responded to the motion-for-summary-judgment portion of Ormsby's filing and on January 2, 2009, filed a separate response to the opposition portion of Ormsby's filing. On April 16, 2009, the trial court granted Ormsby's motion for summary judgment on Williams's claims, reasoning that no consider-

ation existed to support the June 2005 contract. The trial court ruled that the only issue remaining for trial was whether Ormsby was entitled to damages for any possible breach of the March 2005 contract, which the trial court held was supported by consideration. On April 22, 2009, the trial court issued a nunc pro tunc order correcting typographical errors regarding dates. On April 24, 2009, the trial court issued a second nunc pro tunc order correcting another issue related to dates. After subsequent amendments to the pleadings and attempted dismissals of various claims, on October 28, 2009, the trial court issued a judgment entry amending the second nunc pro tunc order to state that the summary-judgment order was final and appealable, despite not disposing of all claims, and that there was no just reason for delay pursuant to Civ.R. 54(B).

{¶ 9} Williams timely filed a notice of appeal, and has raised two assignments of error.

## II

### ASSIGNMENT OF ERROR I

The trial court erred in granting a summary judgment to [Ormsby] by finding there was no consideration for the agreement entered into by the parties in June of 2005.

{¶ 10} In her first assignment of error, Williams contends that the trial court erred in granting summary judgment to Ormsby on the basis that no consideration supported the June 2005 agreement. We agree.

{¶ 11} This court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378.

{¶ 12} Pursuant to Civil Rule 56(C), summary judgment is proper if

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 13} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the

record that show the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). Id. Once this burden is satisfied, the nonmoving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. *Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 735, 600 N.E.2d 791.

{¶ 14} In his motion for summary judgment/opposition to Williams's motion for summary judgment, Ormsby contended that the agreement signed by the parties was not supported by consideration and was therefore unenforceable. Alternatively, he argued that the agreement was conditioned upon marriage and therefore the consideration failed because the relationship terminated prior to marriage.

*Consideration*

{¶ 15} In support of his contention that the agreement was not supported by consideration, Ormsby primarily relied upon *Carlisle v. T & R Excavating, Inc.* (1997), 123 Ohio App.3d 277, 704 N.E.2d 39. In *Carlisle,* this court held that the relationship between a husband and wife cannot serve as consideration for a contract between them. Id. at 284, citing Restatement of the Law 2d, Contracts (1981), 173, Consideration, Section 71, Comment a (stating that "in consideration of love and affection" is insufficient to serve as consideration). We also observed that R.C. 3103.06 prevents spouses from altering their legal relations with each other, with the exception of contracts involving immediate separation and support if they immediately begin living in separate residences. Id. at 285.

{¶ 16} "'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Kostelnik v. Helper* (2002), 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, at ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414.

Without consideration, there can be no contract. Under Ohio law, consideration consists of either a benefit to the promisor or a detriment to the promisee. To constitute consideration, the benefit or detriment must be "bargained for." Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise. The benefit or detriment does not need to be great. In fact, a benefit need not even be actual, as in the nature of a profit, or be as

economically valuable as whatever the promisor promises in exchange for the benefit; it need only be something regarded by the promisor as beneficial enough to induce his promise.

(Citations omitted.) *Carlisle v. T & R Excavating, Inc.*, 123 Ohio App.3d at 283, 704 N.E.2d 39.

{¶ 17} In arguing that Williams provided no consideration, Ormsby referred to Williams's deposition testimony. She acknowledged that she did not provide any money, personal property, or anything tangible in consideration for the June agreement. However, pursuant to *Carlisle*, she was not required to do so. Further, Ormsby ignored the rest of Williams's answer regarding whether he received anything of value in return. She stated, "I thought what was of value was the fact that we were sharing all sorts of things. He had my love. He had— *I shared my assets with him, too. We were living together as a couple.*" (Emphasis added.) Ormsby's counsel engaged Williams in the following exchange:

Q. So, in essence, the consideration was that you were going to resume your relationship and go forward?

A. And move forward with our relationship, yes.

{¶ 18} Ormsby acknowledged that he and Williams resumed their engagement and that she moved back into the house. Ormsby, however, also noted in his affidavit attached to his motion/response that Williams refused to move back in with him or resume their relationship unless she had an undivided one-half interest in the real property. Williams, in the motion to which Ormsby was responding, also identified Ormsby's deposition testimony that he was not threatened or blackmailed into signing the June agreement. He stated, "[S]he refused to move back into the house unless I gave her, you know—unless she were [sic] given equity in the house. So that was her condition."

■ {¶ 19} Under the facts of this case, we conclude that moving into a home with another and resuming a relationship can constitute consideration sufficient to support a contract. This matter is factually distinguishable from *Carlisle*, in that *Carlisle* involved three separate, informal documents, not all of which were signed, and none of which specifically referred to consideration. In this case, both parties signed a formal contract that specifically acknowledges the existence of "valuable consideration that is mutually agreed upon." This matter is further distinguishable from *Carlisle* in that Williams and Ormsby were not married at the time of contract formation. There are obvious public-policy considerations that would discourage finding various forms of benefit or detriment within a marital union to constitute consideration for a legal contract. Here the parties were not married but were attempting to work through differences related to

their personal relationship. The concept of considering personal relations in the context of contracts, however, is not foreign to Ohio jurisprudence. Ohio law recognizes a contract to make a will. See, e.g., *Snyder v. Warde* (1949), 151 Ohio St. 426, 39 O.O. 253, 86 N.E.2d 489. Such a contract, however, requires more than "ordinary services" susceptible of valuation. Id. at paragraph four of the syllabus. Instead, the services "must be of a kind which are rendered as a result of sacrifice by the one performing them, generally being rendered because of love and affection." Id. at 438. While we recognize that Williams's decision to move back in with and resume the relationship with Ormsby was not without reciprocal benefits beyond gaining partial title to the residence, we also recognize that romantic relationships typically involve some sacrifice by each partner. Consideration consists of either a benefit to the promisor or a detriment to the promisee. Whether the bargained-for detriment is equivalent to the benefit received is not determinative of the existence of consideration; it need only be something regarded by the promisor as beneficial enough to induce his promise. *Carlisle*, 123 Ohio App.3d at 283, 704 N.E.2d 39. Moreover, "companionship" has been recognized in case law as valid consideration. *Tiggelbeck v. Russell* (1949), 187 Or. 554, 568, 213 P.2d 156 ("[the services] consisted * * * of the giving of society, companionship and affection * * *. These things are, we think, of the nature of the 'companionship and social relationships * * * found in every home,' of which counsel speak"). The Supreme Court of New Jersey in *In re Estate of Roccamonte* (2002), 174 N.J. 381, 808 A.2d 838, considered whether a promise of support for life is enforceable against the promisor's estate. Arthur Roccamonte and Mary Sopko cohabited with each other while each was married. Eventually Mary terminated the relationship and moved to California. Roccamonte sought her return and telephoned her repeatedly. He promised that if she returned, he would divorce his wife and provide for Sopko for the rest of her life. Relying on their agreement, Sopko returned and resumed the relationship, divorced her husband, and lived with Roccamonte in a marital-type relationship. The couple did not marry but cohabited until Roccamonte's death. Roccamonte died intestate and Sopko sued his estate for palimony. In concluding that there was sufficient consideration to support Roccamonte's promise, the *Roccamonte* court held:

> [T]he undertaking of a way of life in which two people commit to each other, foregoing other liaisons and opportunities, doing for each other whatever each is capable of doing, providing companionship, and fulfilling each other's needs, financial, emotional, physical, and social, as best as they are able. And each couple defines its way of life and each partner's expected contribution to it in its own way. Whatever other consideration may be involved, the entry into

such a relationship and then conducting oneself in accordance with its unique character is consideration in full measure.

Id. at 392–393, 808 A.2d 838.

{¶ 20} Ormsby, although he attempted to do otherwise, directed the court to Williams's testimony establishing consideration in that she shared her assets with him and resumed living together as a couple. As in *Roccamonte*, by resuming the relationship, Williams agreed to undertake a way of life that entailed among other things "providing companionship, and fulfilling each other's needs, financial, emotional, physical, and social, as best as [she was] able," as well as forgoing other romantic possibilities. Id. These are not "ordinary services" susceptible of valuation. *Snyder*, 151 Ohio St. 426, 39 O.O. 253, 86 N.E.2d 489, at paragraph four of the syllabus. Thus, the services would constitute consideration for a contract to make a will. We see no reason why they do not constitute consideration for this contract.

{¶ 21} Ormsby's contention that the consideration was not bargained for is also unavailing because Williams directed the trial court to his testimony that she ended the relationship, vacated the residence, and refused to move back into the house unless she received a one-half interest in the property. Ormsby's affidavit confirms his deposition testimony. Therefore, the contract was supported by bargained-for consideration.

*Contract Conditioned upon Marriage*

{¶ 22} Although the trial court did not directly address Ormsby's contention that even if consideration exists, the equity in the property was conditioned upon marriage, "[w]e are nevertheless required to affirm the trial court's judgment if any valid grounds are found on appeal to support it." *McKay v. Cutlip* (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272, citing *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172. Therefore, we consider this issue. Ormsby's argument is not well taken. While the evidence and the language of the contract indicate that the parties did intend to be married, Ormsby failed to direct the trial court to any contractual provision creating a *condition*. In support of his argument, Ormsby cites, among others, *Zsigmond v. Vandemberg* (Dec. 29, 1995), 11th Dist. No. 95–P–0006, 1995 WL 815349, which held that gifts conditioned upon marriage must be returned if the marriage does not occur. Putting aside for the moment the inapplicability of the case law cited by Ormsby regarding contracts conditioned on marriage, the June 2005 contract does not contain any language that can be construed as a condition. Instead, the contract contains only a statement in the recital section that "[Ormsby] and [Williams] plan be [sic] married and to reside in the house." This statement is part of a larger paragraph, which indicates that on December 15, 2004, Ormsby paid off the remainder of the mortgage. Additionally, the contract

has a provision addressing the possibility "that the *relationship* between [Williams] and [Ormsby] would end." (Emphasis added.) Should the relationship end, the parties agreed that if Ormsby elected to keep the house, he would pay Williams her share of the appraised value of the house at that time. Had the contract been conditioned upon marriage, the parties could have used the term "marriage" rather than "relationship." Accordingly, we disagree that the contract was conditioned upon marriage.

{¶ 23} Because the contract was supported by consideration and the contract was not conditioned upon marriage, the trial court erred in granting summary judgment to Ormsby. Williams's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

The trial court erred in not granting [Williams's] motion for summary judgment.

{¶ 24} In her second assignment of error, Williams contends that the trial court erred in failing to grant summary judgment in her favor. Having first determined that the trial court erred in granting summary judgment to Ormsby, we must now address whether the trial court erred in failing to grant Williams's motion for summary judgment.

{¶ 25} The trial court immediately reached the conclusion that the June contract was unsupported by consideration flowing from Williams. This conclusion was erroneous, as we explained above. Therefore, the trial court never reached a full consideration of Williams's motion, and we decline to decide the issue for the first time on appeal. See *Bergey v. HSBC Bank USA,* 9th Dist. No. 24986, 2010-Ohio-2736, 2010 WL 2395506, at ¶ 22.

## III

{¶ 26} Williams's first assignment of error is sustained. We decline to address Williams's second assignment of error. We reverse the judgment of the Medina County Court of Common Pleas granting summary judgment in favor of Ormsby and remand the cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BELFANCE, P.J., and WHITMORE, J., concur.