CARLISLE et al., Appellees,

v.

T & R EXCAVATING, INC., Appellant.

[Cite *Carlisle v. T & R Excavating, Inc.* (1997), 123 Ohio App.3d 277.]

Court of Appeals of Ohio,
Ninth District, Medina County.

No. 2616–M.

Decided Oct. 15, 1997.

*Dean R. Steigerwald*, for appellant.

*Bruce D. Parish*, for appellees.

DICKINSON, Presiding Judge.

Defendant T & R Excavating Inc. has appealed from a judgment of the Medina County Common Pleas Court that awarded $35,790.75 in damages for breach of contract to plaintiffs Janis Carlisle, Wishing Well Preschool Inc., and Janis Carlisle, trustee, The Enrichment Center of Wishing Well, Inc. Defendant has argued that the trial court incorrectly found that there was a contract between the parties because their agreement lacked sufficient consideration and definiteness. This court reverses the judgment of the trial court because there was no consideration for the agreement between the parties and, therefore, no contract existed.

I

Defendant T & R Excavating, Inc. is solely owned and operated by Thomas Carlisle. Plaintiff Janis Carlisle is the owner and director of Wishing Well, Inc.

and trustee of The Enrichment Center of Wishing Well, Inc., both of which were also plaintiffs in this action.

Ms. Carlisle and Mr. Carlisle married in 1988. According to Ms. Carlisle's trial testimony, shortly after they were married, she began doing all of the bookkeeping for T & R, including organizing and modernizing its bookkeeping system. Mr. Carlisle allegedly offered to pay her for her work, but she refused. He then allegedly stated to her that he would, instead, "do [her] work for [her] on [her] building." No testimony or other evidence was offered regarding when he made this offer to pay her or when he stated his intention to do work on her building.

During 1992, Ms. Carlisle decided to build a preschool and kindergarten facility. Mr. Carlisle helped her find a location for the preschool, and she purchased the land they selected. Following this, he helped her choose a general contractor for the construction of the preschool.

On September 25, 1992, T & R presented a "Proposal" to Ms. Carlisle in which it proposed the following:

"We hereby propose to do all of the excavation and site work at the above new Location. The total amount budgeted for this portion of the new building is $69,800.00. All labor, equipment costs, overhead and profit, necessary for the completion of this project, totalling $40,000.00 will be provided at no cost to Wishing Well Preschool, Inc. The $29,800.00 allotted for materials will be billed to Wishing Well Preschool, Inc. at T & R Excavating's cost."

On that same date, Ms. Carlisle signed an "Acceptance of Proposal," which was printed at the bottom of the "Proposal":

"The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified. Payment will be made as outlined above."

During December 1992, Mr. Carlisle and Ms. Carlisle, in anticipation of a possible divorce, prepared a document in which they made provision for the division of certain property and agreed that neither would be responsible for supporting the other. Also included in that document was a paragraph regarding Ms. Carlisle's secretarial work and T & R's excavating work:

"In repayment to Jan for her secretarial services and computer programming to T & R Excavating, Inc., Tom agrees to do all the excavating and site work for The Enrichment Center in a timely manner, as set forth in his proposal dated September, 1992. In this proposal, Wishing Well Preschool, Inc., agrees to pay Tom for the materials used at his cost."

On February 1, 1993, the general contractor prepared and presented to Mr. Carlisle a standardized American Institute of Architects document, signed by Ms.

Carlisle, entitled "Abbreviated Form of Agreement Between Owner and Contractor." Some information specific to the preschool project was typed into the appropriate blank areas of the document, and the last several pages of the agreement consisted of printed contract language. The typed-in information included a description of the site work to be done, an estimate of $29,325.00 for materials, a plan for how payment was to be made, a start date of February 1, 1993, and a completion date of June 25, 1993. Also typed in were the following statements:

"This contract is for material only. There is no charge for labor and equipment.

"The contract sum will be adjusted at the completion of this work to reflect the actual cost of materials installed."

Mr. Carlisle never signed the document.

Sometime during early 1993, T & R began performing excavation and site work for the preschool. According to Mr. Carlisle's testimony at trial, Ms. Carlisle was no longer providing any bookkeeping or secretarial services to T & R after January 1993. They separated during March 1993, and T & R continued working on the project until it abandoned it in late May or early June 1993. By that time, Wishing Well Inc. had paid approximately $35,000 for materials used by T & R for excavation and site work. Ms. Carlisle hired other workers to finish the excavation and site work. The preschool opened for business on August 28, 1993, one week later than originally planned. Ms. Carlisle, individually and as trustee of The Enrichment Center, and Wishing Well Preschool sued T & R for breach of contract. They requested damages equal to the amount it cost to have others finish the excavation and site work, as well as the amount lost due to delays allegedly attributable to T & R's failure to work during certain periods prior to its final abandonment of the job. The trial court found that there was a contract for the excavation and site work and awarded plaintiffs $35,790.75 in damages for the cost of hiring others to finish that work after T & R left the project. The trial court, however, did not award any damages for the cost of delays. It found that plaintiffs had failed to prove that T & R was responsible for losses caused by delays, because there had been significant delays due to late material deliveries which were not its fault. T & R timely appealed to this court.

## II

T & R's sole assignment of error is that the trial court incorrectly found that there was a contract between the parties, because their agreement lacked sufficient consideration and definiteness. It has asserted that its offer to do the excavation and site work for the preschool was in the nature of a gift or a favor,

and was not supported by any legally sufficient consideration. In addition, it has asserted that the scope of the work it agreed to do was so uncertain that there could have been no meeting of the minds necessary to the formation of a contract.

A contract consists of an offer, an acceptance, and consideration. See *Tersigni v. Gen. Tire, Inc.* (1993), 91 Ohio App.3d 757, 760, 633 N.E.2d 1140, 1141–1142. Without consideration, there can be no contract. *Brads v. First Baptist Church of Germantown, Ohio* (1993), 89 Ohio App.3d 328, 336, 624 N.E.2d 737, 743. Under Ohio law, consideration consists of either a benefit to the promisor or a detriment to the promisee. *Cooper v. Nason* (June 22, 1993), Lorain App. No. 92CA005474, unreported, 1993 WL 216303. To constitute consideration, the benefit or detriment must be "bargained for." See *Kaufmann v. Fiduciary Mgt., Inc.* (Sept. 8, 1993), Hamilton App. No. C–920399, unreported, 1993 WL 342234. Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise. See Restatement of the Law 2d, Contracts (1981) 172, Section 71. See, also, *Keller Elec. Inc. v. Gilbert* (Apr. 17, 1996), Summit App. No. 17467, unreported, at 9, 1996 WL 183027. The benefit or detriment does not need to be great. In fact, a benefit need not even be actual, as in the nature of a profit, or be as economically valuable as whatever the promisor promises in exchange for the benefit; it need only be something regarded by the promisor as beneficial enough to induce his promise. See *Fouch v. Smith Grocery, Inc.* (Apr. 8, 1987), Wayne App. No. 2198, unreported, at 6, 1987 WL 9478. See, also, 3 Williston, Contracts (4 Ed.1992) 41–47, Section 7:4. Generally, therefore, a court will not inquire into the adequacy of consideration once it is found to exist. See *Rogers v. Runfola & Assocs.* (1991), 57 Ohio St.3d 5, 6, 565 N.E.2d 540, 541–542.

Whether there is consideration at all, however, is a proper question for a court. *Irving Leasing Corp. v. M & H Tire Co.* (1984), 16 Ohio App.3d 191, 192, 16 OBR 205, 206–207, 475 N.E.2d 127, 129–130. Gratuitous promises are not enforceable as contracts, because there is no consideration. Restatement of Contracts, *supra*, 172–174, Section 71, Comments *a* and *b*. See, also, *Murphey, Young & Smith Co., L.P.A. v. Billman* (Nov. 20, 1984), Franklin App. No. 84AP–49 and 84AP–198, unreported, 1984 WL 5993. A written gratuitous promise, even if it evidences an intent by the promisor to be bound, is not a contract. 2 Corbin, Contracts (Rev.1995) 20, Section 5.3. Likewise, conditional gratuitous promises, which require the promisee to do something before the promised act or omission will take place, are not enforceable as contracts. Restatement of Contracts, *supra*, 174, Section 71, Comment *c*. While it is true, therefore, that courts generally do not inquire into the adequacy of consideration once it is found to exist, it must be determined in a contract case whether any "consideration"

was really bargained for. If it was not bargained for, it could not support a contract.

There is no evidence in the record of any benefit accruing to T & R or any detriment suffered by Ms. Carlisle due to their agreement that could constitute consideration for a contract. Statements made during trial regarding the parties' agreement failed to show that there was consideration for T & R's promise. Mr. Carlisle testified that he wanted to help Ms. Carlisle with the preschool and that they both agreed the preschool would be a good retirement benefit for them. The trial judge, at one point, stated his opinion that Mr. Carlisle made his promise because he was "a nice guy and wanted to help [Ms. Carlisle] out," that the consideration for his promise was the "relationship," and that they both hoped to benefit from the preschool.

A desire to help cannot be consideration for a contract; rather, it is merely a motive. See Williston, Contracts, *supra*, 336–338, Section 7:17. Further, the possibility of sharing in the income from a spouse's business, which would be marital income, cannot be consideration for a contract because one is already entitled to share in marital income. See, *e.g.*, *Schneider v. Schneider* (1996), 110 Ohio App.3d 487, 493, 674 N.E.2d 769, 772–773. No bargaining is necessary to obtain that which one already has. The decision to build the preschool to provide income later was more in the nature of a joint effort by Mr. Carlisle and Ms. Carlisle to obtain a single benefit together, than a bargained-for exchange. Finally, the relationship between Mr. Carlisle and Ms. Carlisle could not have been consideration for a contract. See Restatement of Contracts, *supra*, 173, Section 71, Comment *a*. See, also, Corbin, Contracts, *supra*, 90, Section 5.18.

Nor did Ms. Carlisle's testimony about her understanding of the parties' agreement demonstrate that there was consideration for a contract. Ms. Carlisle testified at trial that she understood the agreement to consist of T & R's promise to do excavation and site work for no charge, and her promise to "pay [T & R] back for the supplies." The promise of reimbursement for out-of-pocket costs, standing alone, was not a benefit or detriment supporting a contract. Money changed hands, but the reimbursement was not a bargained-for benefit to the promisor or detriment to the promisee. No reasonable interpretation of Ms. Carlisle's testimony could support a conclusion that T & R promised to provide the free services in order to induce her to promise to reimburse it for materials only. Rather, the testimony suggested that there was a gratuitous promise by T & R to provide free services on the condition that Ms. Carlisle agree to reimburse it for the cost of materials that would be used in providing those services.

■ Consideration was also not shown by Ms. Carlisle's testimony that Mr. Carlisle told her, after she refused payment for her bookkeeping services to T & R, that he would help her with her building. First, Ms. Carlisle did not argue that her secretarial services were consideration for T & R's promise. Second, there was no testimony or other evidence regarding when Mr. Carlisle made that statement or whether the two exchanged services in a bargain. Consequently, it may not be assumed that there was a contract on this basis. If Mr. Carlisle made the statement after Ms. Carlisle had done the work for T & R, her services were "past consideration" and could not support a contract. See *Gem Sav. Assn v. Aqua Sportsman, Inc.* (Aug. 12, 1992), Hamilton App. No. C–910361, unreported, 1992 WL 192500. See, also, Restatement of Contracts, *supra*, 173, Section 71, Comment *a.* This is because past consideration cannot be a bargained-for benefit or detriment, since it has already occurred or accrued. If T & R was merely repaying Ms. Carlisle for past services, its promise to do the excavation and site work was not legally enforceable. Similarly, if Mr. Carlisle offered to help her with her building out of mere gratitude and she accepted it as such, that also precluded her services from being consideration.

The documents relied upon by the trial court for its finding that a contract existed also failed to show consideration for a contract. According to the proposal and acceptance signed by Mr. Carlisle and Ms. Carlisle during September 1992, T & R would provide services at no cost, and only materials would be billed to Wishing Well. Not one penny was to go into the pocket of T & R or Mr. Carlisle, nor was any other benefit to T & R apparent from the face of the proposal or any other evidence. This made the promise to reimburse for materials more likely to have been a condition for a gratuitous promise, rather than a detriment that would support a contract, because, once again, there was no reason for either party to understand the reimbursement promise as having induced T & R's promise.

Likewise, the "separation agreement" signed by Mr. Carlisle and Ms. Carlisle during December 1992 suggested a gratuitous promise by Mr. Carlisle. It described his promise to do the work as "repayment to Jan for her secretarial services and computer programming to T & R Excavating, Inc." The word "repayment" suggested that Ms. Carlisle's past services induced Mr. Carlisle's promise. As stated above, past consideration is not legally sufficient to support a contract. See *Gem Sav. Assn. v. Aqua Sportsman, Inc.* (Aug. 12, 1992), Hamilton App. No. C–910361, unreported, 1992 WL 192500. See, also, Restatement of Contracts, *supra*, 173, Section 71, Comment *a.*

■ Nor was that document itself an enforceable contract, even though one might argue that it showed a bargained-for exchange of certain property rights for excavation and site work. A married couple cannot make a contract

that alters their legal relations, with the exception of a separation agreement that provides for support and property division if they immediately begin living in separate residences. See R.C. 3103.06. See, also, *Lindamood v. Lindamood* (Sept. 22, 1989), Montgomery App. No. CA–11301, unreported, 1989 WL 113129. According to their testimony, Mr. Carlisle and Ms. Carlisle did not separate immediately after executing the agreement, but waited several months to do so. The agreement, therefore, could not operate as a valid separation agreement. See *Hornberger v. Hornberger* (Dec. 17, 1986), Carroll App. No. 531, unreported, 1986 WL 14404; *In re Estate of Daneman* (Dec. 4, 1985), Knox App. No. CA 85–07, unreported, 1985 WL 4182; *Rose v. Rose* (March 17, 1981), Montgomery App. No. 6898, unreported, 1981 WL 2726; and *Schaum v. Schaum* (Nov. 17, 1978), Greene App. No. 999, unreported.

 Finally, the American Institute of Architects document signed by Ms. Carlisle and presented by her to the trial court did not establish a contract. It contained the typed-in statements "This contract is for material only," "There is no charge for labor and equipment," and "The contract sum will be adjusted at the completion of this work to reflect the actual cost of materials installed." These statements, like Ms. Carlisle's trial testimony, indicated that her understanding of the agreement was that there was no contract for the excavating and site work services, and that she would merely reimburse T & R for the actual cost of materials used.

Contrary to plaintiffs' position, nothing in the record shows any reasonable possibility that T & R bargained away the free excavation and site work services in exchange for the "benefit" of collecting from Wishing Well the materials costs that T & R had to pay someone else. Nor does it show any possibility that Ms. Carlisle reasonably believed that her promise to reimburse induced the promise for free services. At the time of the agreement, therefore, there was no contract, and T & R cannot be held liable on that basis. Rather, the record establishes only a conditional gratuitous promise.

 A discussion of conditional promises as distinguished from contracts is found in Williston, Contracts, *supra*, 348–352, Section 7:18. A requested performance attached to a gratuitous promise is a condition and not consideration, not because of the nature of the requested performance itself, but because of the reasonable understanding of the promisor and the promisee that the performance is requested as a condition of the promise and not as the price or exchange for the promise. *Id.* Although there is no easy test for distinguishing between a condition and consideration, it is useful to ask whether the requested performance will benefit the promisor: if it will not, and if, in addition, it is obviously aimed at enabling the promisee to receive a benefit or gift, there is no

consideration. *Id.* This is true even though the promisee performs as requested in reliance on the promise. *Id.*[1]

 A condition for a promise, therefore, is different from consideration. Consideration induces the promise of the promisor, is bargained for, and results in a benefit to the promisor or a detriment to the promisee which is reasonably understood by the parties as the consideration for the promise. A condition for a promise, in contrast, does not induce the promise, is not bargained for, and is not reasonably understood as consideration. The evidence at trial showed that T & R's promise to provide the excavation and site work services for the preschool at no cost was a gratuitous promise, and T & R's promise to pay for any materials it used was, at most, merely a condition of T & R's promise to provide services. No benefit was to come to T & R; it could not reasonably be believed that T & R induced the promise of reimbursement as the price of its promise; and Ms. Carlisle's promise to pay for materials was for the purpose of enabling her to receive the benefit of free excavating and site work services.

 The only way Ms. Carlisle could have properly recovered the value of the services, therefore, is if she had argued and proved, under a theory of promissory estoppel, that she had reasonably relied to her detriment on T & R's promise. See *Thatcher v. Goodwill Indus. of Akron* (1997), 117 Ohio App.3d 525, 540–541, 690 N.E.2d 1320, 1329–1330. See, also, Restatement of Contracts, *supra*, 242, Section 90, Comment *a.* She has made no mention of detrimental reliance in her brief to this court, nor is it clear whether she was trying to argue it at trial. At any rate, the only evidence presented at trial suggesting reliance on the part of Ms. Carlisle was the following exchange during direct testimony:

"Q. Did you, in securing financing, in part rely upon the proposal marked, the agreement marked Plaintiff's Exhibit 6?

"A. This was requested by Huntington Bank. The banker I worked with, Doug Whitken, in trying to get the loans, saw this was collateral, and asked this be written into a contract to be used as collateral.

"Q. Did you proceed in this project relying in part on this agreement with T & R Excavating?

---

1. This Williston discussion uses an example of a rich man offering to a poor man that, if the poor man would go around the corner to a clothing store, the rich man would permit him to buy a coat on his credit. This is deemed a conditional gratuitous promise because, even though the poor man's walk to the store may be induced by, and taken in reliance on, the promise, it would be unreasonable for either man to understand the walk to the store as "consideration" or as the price of the promise. Rather, it would bring no benefit to the rich man, and would obviously be for the purpose of enabling the poor man to receive the gift of a coat.

"A. Absolutely.

"Q. Did T & R pull off the job before it had completed all the site work it was to do?

"A. Yes.

"Q. Did your construction engineer have to go out and see other people to finish up the job?

"A. Yes, he did.

"Q. And were they paid?

"A. Yes, they were paid.

"Q. As a result of T & R pulling off the job, did this cause you any kind of a delay?

"A. Yes, it did."

Following this, Ms. Carlisle testified about the various costs incurred as a result of delays she attributed to the failure of T & R to complete the work as originally planned.

The trial court found that Ms. Carlisle failed to prove that the delay in opening the preschool was attributable to T & R, and no other possible detriment other than delay-related expenses was suggested by Ms. Carlisle at trial. The fact that she may have relied on T & R's promise, as she testified, therefore, was not sufficient to recover under promissory estoppel, since she did not prove that the reliance was detrimental. See *Thatcher v. Goodwill Indus. of Akron, supra.* Simply paying other workers to finish the job does not establish detrimental reliance, even if she was forced to pay much more than she would have had to pay if T & R had finished it. Such payment merely left her in the position she would have been in had T & R never made its promise, assuming she would have built the preschool even without that promise. See Restatement of Contracts, *supra,* 246–247, Section 90, Comment *f.* See, also, *e.g., Condon v. Body, Vickers & Daniels* (1994), 99 Ohio App.3d 12, 21, 649 N.E.2d 1259, 1264–1265. Nowhere in the record is there a suggestion that she would not have built the preschool, or built it as she did, without relying on the promise of free services by T & R. Moreover, the preschool cost approximately $800,000 to build, and T & R's fulfilled promise would have saved Ms. Carlisle only about $35,000, according to the trial court's decision and award. This amount is less than five percent of the building cost. There is, therefore, no argument, no evidence, and no basis for inferring that Ms. Carlisle relied to her detriment on T & R's promise.

Ms. Carlisle failed to establish that there was consideration for T & R's promise to do free excavation and site work for the preschool, or that she relied to her detriment on the promise. The promise, therefore, was not legally

enforceable. See *Brads v. First Baptist Church of Germantown, Ohio* and *Thatcher v. Goodwill Indus. of Akron, supra.* T & R's assignment of error is sustained.[2]

### III

T & R's assignment of error is sustained. The judgment of the trial court is reversed.

*Judgment reversed*
*and cause remanded.*

QUILLIN and SLABY, JJ., concur.

---

**2.** In light of this holding, this court need not reach the issue of whether Mr. Carlisle's promise was unenforceable due to indefiniteness of terms.