**CSX TRANSPORTATION, INC.,**
**Plaintiff–Appellee,**

v.

**OCCIDENTAL CHEMICAL**
**CORPORATION, Defendant–Appellant.**

No. 01–3427.

United States Court of Appeals,
Sixth Circuit.

May 22, 2003.

Before RYAN, BATCHELDER, and LAY, Circuit Judges.*

RYAN, Circuit Judge.

The plaintiff, CSX Transportation, Inc., claims it had a contract with the defendant, Occidental Chemical Corporation, under which Occidental would defend and indemnify CSX in a personal injury action brought by William Johnston, a CSX employee. When Occidental refused to defend and indemnify CSX, CSX brought an action for breach of contract, and Occidental counterclaimed for unjust enrichment. The district court granted summary judgment in favor of CSX, concluding that the parties had a contract which Occidental breached. Occidental now appeals.

We conclude that the parties had a contract and that, therefore, Occidental is obligated to defend and indemnify CSX. We affirm the district court's judgment.

## I.

CSX shipped railcars to and from Occidental's manufacturing facility in Cincinnati, Ohio, pursuant to bills of lading and contracts of carriage with Occidental. Sometime before January 12, 1996, Occidental requested that CSX deliver a specific tank car, located in CSX's storage facility, to Occidental's Cincinnati facility. Occidental had previously leased the tank car from an owner not involved in this litigation. On January 12, 1996, Johnston climbed onto the end of the tank car and took hold of a handrail. As the tank car moved, the handrail broke, causing Johnston to fall and sustain injuries. The accident occurred at Occidental's Cincinnati facility.

Richard Shipley, Jr., investigated the accident for CSX. As part of the investigation, Shipley requested that CSX conduct a computerized search for copies of all agreements between CSX and Occidental, including sidetrack, lease, and car storage agreements. Most "sidetrack" agreements contain provisions relating to indemnification of a railroad by a customer being served by the railroad. Occidental's sidetrack agreements often stated that it had responsibility for any accident that occurred on its property. There was testimony that these agreements can be diffi-

* The Honorable Donald P. Lay, United States Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

cult to find because they may date as far back as the 1920s. Shipley's search did not uncover a sidetrack agreement concerning the premises upon which the accident occurred.

Jerry Chabre investigated the accident for Occidental. During his investigation, he spoke with an Occidental employee, Eugene Thomas, who told him that Occidental was responsible for maintaining and inspecting the cars. Chabre proceeded with his investigation, working on the assumption that Occidental might be liable for the accident because it leased the tank car. According to Shipley, a few days after the accident Chabre told him that Occidental was responsible for the maintenance of the car. Shipley testified that based on this conversation, he wrote the following to Chabre:

> Since [Occidental] leases the railcar ... and is responsible for the maintenance of same, CSX Transportation, Inc. will look to Occidental Chemical Corporation to defend, indemnify and hold harmless the railroad in this matter.

After Johnston filed his suit against CSX, Shipley again informed Chabre that CSX expected defense and indemnification. When Chabre learned that Johnston had filed his lawsuit, he told Occidental's claims adjuster that Occidental would probably want CSX to answer Johnston's complaint. Chabre stated that then CSX could file a cross claim against Occidental.

In response to CSX's demands, Occidental searched its files for all documents related to Occidental and CSX, all documents related to the facility at which the accident occurred, and all documents related to the rail operation in the area of the accident. Specifically, Occidental searched for a sidetrack agreement regarding control of the accident site. Despite the difficulty in locating sidetrack agreements, Occidental thought that eventually it would

find one. Occidental believed that it could be liable for the accident under a sidetrack agreement, or in the alternative, a leasing agreement.

Concluding, apparently, that it was ultimately the liable party, Occidental informed CSX that "Occidental Chemical will assume the defense and indemnity of this matter for CSX Railroad pursuant to the terms of the contract." Occidental then retained counsel to defend CSX in the Johnston case. CSX permitted the substitution of Occidental's counsel for its own. At oral argument, CSX noted that it turned over its files to Occidental's counsel.

Occidental's counsel represented CSX in the Johnston case for approximately 18 months, during which time CSX did not file a claim against Occidental. Two months before the trial was to begin, Occidental informed Shipley that it would no longer defend and indemnify CSX. Occidental and its attorneys had never uncovered a sidetrack agreement, or any other agreement, which required Occidental to defend and indemnify CSX. Occidental told Shipley that it had acknowledged an obligation to defend and indemnify CSX "pursuant to the terms of the contract," as stated in its letter to CSX, but since neither party had uncovered the "contract" to which Occidental referred, it was not in fact obligated to defend and indemnify CSX.

The Johnston litigation proceeded and the district court directed a verdict of liability against CSX. CSX and Johnston then settled the case for $400,000, an amount that CSX considers "fair and reasonable." CSX now demands that Occidental indemnify it for $400,000 plus interest. On its claim of unjust enrichment, Occidental seeks $100,000 to recover the legal fees it incurred for CSX's defense.

## II.

We review *de novo* a district court's grant of summary judgment. *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 246 (6th Cir.2000). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the district court's grant of summary judgment, we draw all justifiable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The parties dispute whether, in the course of their dealings after the accident, they entered into a contractual relationship. They disagree, first, whether Occidental made an offer which CSX accepted, and second, whether, if there was an offer and acceptance, it was supported by consideration. As to the offer and acceptance issue, CSX argues that Occidental made an offer when it sent the letter stating that it would defend and indemnify CSX. Occidental, on the other hand, argues that the letter was not an offer, but simply a "statement of intent." Occidental argues that furthermore, any "offer" was limited by the condition "pursuant to the terms of the contract."

In response to Occidental's claim that, in all events, there was no consideration for a contract—no detriment or benefit—CSX argues that in exchange for Occidental's written promise to defend and indemnify it, CSX gave up its right to bring a third-party claim against Occidental. CSX contends that the relinquishment of its potential claims constituted consideration. Occidental insists that there was no consideration—first, because there was no

bargaining, and in the alternative, because any claim by CSX had no merit. Occidental contends that all CSX gave up was a valueless claim because Occidental could not have been held liable for the accident. In response, CSX asserts that the contract was supported by consideration if there was *some* possibility, however small, that Occidental could have been held liable if CSX had brought a claim.

### A. Offer and Acceptance

■ Our resolution of this not-so-simple case invites a return to a legal analysis reminiscent of a first-year law school contracts class.

To prove the existence of a contract under Ohio law, a party "must show the elements of mutual assent (generally, offer and acceptance) and consideration." *Nilavar v. Osborn*, 127 Ohio App.3d 1, 711 N.E.2d 726, 732 (1998). "An offer is the manifestation of willingness to enter into a bargain," so that the offeree understands that his assent is invited and will conclude the contract. *Ford v. Tandy Transp., Inc.*, 86 Ohio App.3d 364, 620 N.E.2d 996, 1006 (1993). Acceptance is the "manifestation of assent" by the offeree. *Id.*

A party "must also show that there was a 'meeting of the minds' and that the contract was definite as to its essential terms." *Nilavar*, 711 N.E.2d at 732. The essential terms are the parties to the contract and its subject matter. *Id.* at 734. The terms are sufficiently certain if they provide a basis to determine a breach and a remedy. *Id.* In other words, a contract is an "exchange of promises where the parties have communicated in some manner the terms to which they agree to be bound." *Ford*, 620 N.E.2d at 1006.

CSX invited Occidental to do business with it when it requested defense and indemnification. Occidental then made an

unambiguous offer, in writing, to do just that. The letter which stated "Occidental Chemical will assume the defense and indemnity of this matter for CSX Railroad pursuant to the terms of the contract" manifested Occidental's willingness to bargain with CSX. The letter was not, as Occidental now claims, merely a "statement of intent."

The parties understood and contemplated the same bargain–that CSX would forgo any claim it could bring against Occidental in exchange for defense and indemnification. When Occidental sent the letter, it contemplated that it could ultimately be held liable for the accident, most likely because of a sidetrack agreement, but possibly because of a lease agreement or some other prior contract between the parties. Chabre's memo, written after Johnston filed his complaint, stated that CSX "could file a cross claim against [Occidental]." John Miles, a claims manager at Occidental, believed that CSX could have filed a third-party claim against Occidental "at any time." Shipley and his associates at CSX discussed the possibility of bringing a third-party claim. Both parties indicated the belief that Occidental was probably liable in some way, and both parties thought that CSX could bring a claim against Occidental. When Occidental promised to defend and indemnify, it made an offer and, in return, CSX accepted the offer by turning over its files to Occidental's counsel and declining to pursue a claim against Occidental. When CSX manifested its assent to the bargain, the required "meeting of the minds" took place.

Occidental argues that even if the letter was an offer, it was a conditional offer because it included the words "pursuant to the terms of the contract." Occidental asserts that this language referred to a sidetrack agreement which it believed existed at the time it sent the letter. CSX maintains that it always thought Occidental had a duty to defend and indemnify based on the common law or the lease agreement, quite aside from whether a sidetrack agreement existed. Occidental contends that because there is no sidetrack agreement, and furthermore because CSX did not even contemplate such an agreement when it accepted the offer, there could be no "meeting of the minds" on the essential terms of the contract.

However, the essential terms are the parties and the subject matter, not the factual or legal motivation for making the agreement. Regardless of the existence of a sidetrack agreement, the phrase "pursuant to the terms of the contract" did not create a condition. The phrase was a gratuitous reference to what Occidental believed to be the source of its obligation and perhaps its reason for entering the agreement; it did not alter the nature of the agreement. The phrase "pursuant to the terms of the contract" did not render the offer conditional, was not an essential term of the contract, and, at most, was mere surplusage.

■ A related issue is whether the parties made a mutual mistake through their interpretations of "pursuant to the terms of the contract." A mutual mistake could be a ground for recision of the contract, *Reilley v. Richards,* 69 Ohio St.3d 352, 632 N.E.2d 507, 508 (1994), providing the mistake is *material* to the agreement. "A mistake is material to a contract when it is 'a mistake . . . as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances.'" *Id.* at 509 (quoting Restatement (Second) of Contracts § 152(1) (1981)). However, a party bears the risk of a mistake when " 'he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts

to which the mistake relates but treats his limited knowledge as sufficient.'" *J.A. Indus. v. All Am. Plastics, Inc.,* 133 Ohio App.3d 76, 726 N.E.2d 1066, 1072 (1999) (quoting Restatement (Second) of Contracts § 154 (1981)).

Here, any mistake as to the source of Occidental's obligation did not have "a material effect on the agreed exchange of performances." *Reilley,* 632 N.E.2d at 509. The essential subject matter of the contract was defense and indemnification, and the parties made no mistake that defense and indemnification of CSX was the subject of their agreement. Furthermore, CSX made no mistake at all; it maintained that Occidental had a duty to defend and indemnify based on the lease or the common law, and it still maintains as much. Indeed, the only mistake was on the part of Occidental, in thinking that a sidetrack agreement existed and that it probably obligated it to defend and indemnify CSX. Thus, we reject Occidental's argument that any contract should be rescinded for mutual mistake.

## B. Consideration

■ We have concluded that Occidental made an offer which CSX accepted. Next, we turn to the issue of consideration. It is elemental, of course, that "[w]ithout consideration, there can be no contract." *Carlisle v. T & R Excavating, Inc.,* 123 Ohio App.3d 277, 704 N.E.2d 39, 43 (1997). "Valuable consideration may consist of either a detriment to the promisee or a benefit to the promisor, and once consideration is shown, a court will not inquire into the adequacy of consideration except in cases of fraud or unfair treatment." *Ford,* 620 N.E.2d at 1009. "[A]ny detriment, no matter how economically trifling, will support a promise." *Crocker v. Hood,* 113 Ohio App.3d 478, 681 N.E.2d 460, 463 (Ohio Ct.App.1996). Consideration "need

not be expressed and 'may be inferred from the terms and obvious import of the contract.'" *Nilavar,* 711 N.E.2d at 735 (quoting 17 Ohio Jurisprudence 3d *Contracts* § 46 (1980)). Consideration must be something intended by the parties; it cannot be something merely incidental to the contract. *Id.* (citing 17 Ohio Jurisprudence 3d *Contracts* § 54 (1980)).

The benefit or detriment must be bargained for, meaning that it was sought by the promisor in exchange for its promise and given by the promisee in exchange for that promise. *Carlisle,* 704 N.E.2d at 43. As we have stated, CSX and Occidental formed the contract through bargaining. Parties need not express the consideration; it can be inferred from the terms and import of the bargain. *See Nilavar,* 711 N.E.2d at 735.

To constitute consideration, the relinquishment of the right must be either a detriment to CSX or a benefit to Occidental. "A detriment may consist of some forbearance ... suffered or undertaken by the promisee." *Crocker,* 681 N.E.2d at 463. CSX claims it gave up its right to bring a third-party claim against Occidental in exchange for defense and indemnification. Occidental maintains that there was no consideration because "CSX's promise [was] utterly valueless," because any claim by CSX would have had no merit. CSX responds that there was sufficient consideration based on "the possible existence of some duty[] on the part of Occidental." We agree. CSX is not required to show that Occidental is in fact liable. Instead, it must show that Occidental could have been liable. CSX has done so by raising two possible sources of liability: (1) railroad common law, based on the lease agreement and the holding in *Ellison v. Shell Oil Co.,* 882 F.2d 349 (9th Cir. 1989); and (2) bailment law.

Regardless of the strength of CSX's claims, CSX suffered a detriment not only

because it did not pursue a claim, but also because it gave up its right to investigate and develop its theories of liability. CSX could have engaged in discovery to develop an independent basis for a claim of indemnity against Occidental. Detriment means "legal detriment rather than detriment in fact." 3 Richard A. Lord, *Williston on Contracts* § 7:4, at 45 (4th ed.1992). CSX, as the promisee, suffered a detriment when it refrained from doing something it was privileged to do. *See id.* at 46. In giving up its right to bring a claim, as well as its right to develop a basis for a claim, CSX suffered a legal detriment, although it may not have suffered a "detriment in fact." *Id.* at 45. We need not measure the detriment in comparison to the promise because "anything which fulfills the requirement of consideration will support a promise, regardless of the comparative value of the consideration and of the thing promised." *Id.* at § 7:21, at 384–86 (footnote omitted). Now that CSX has shown consideration, we "will not inquire into the adequacy of [the] consideration." *Ford,* 620 N.E.2d at 1009.

Although not essential to our analysis of consideration, we note that Occidental, the promisor, received a benefit as well. By defending and indemnifying CSX, Occidental precluded the development of an adversarial relationship with a longtime business partner. Essentially though, the contract between CSX and Occidental was supported by consideration because CSX neither investigated nor pursued a third-party claim against Occidental.

### III.

CSX and Occidental had a contract which was formed through offer and acceptance and supported by consideration. The contract was not limited by any condition. Pursuant to the terms of the contract, Occidental was required to defend and indemnify CSX. When Occidental refused to do so, it breached the contract.

Because CSX is entitled to summary judgment on its breach of contract claim, we decline to address its promissory estoppel claim. For the foregoing reasons, the judgment of the district court is AFFIRMED.

BATCHELDER, Circuit Judge, dissent.

I respectfully dissent. I would hold that Occidental has presented sufficient evidence to raise genuine issues for trial with respect to whether the parties ever bargained for the consideration that CSX claims and the majority opinion holds was the consideration for the contract; whether the parties "understood and contemplated the same bargain," as the majority holds; and whether Occidental's offer to defend and indemnify "pursuant to the terms of the contract" was a conditional offer.