OPINION
{¶ 1} Ost Mark, Inc., appeals from a judgment of the Oakwood Municipal Court, which awarded severance pay and postage costs to Richard Martin, a former employee. Ost Mark claims that the trial court erred in awarding severance pay to Martin because its offer of severance pay was not supported by consideration. We agree.
 {¶ 2} The parties have adopted the trial court's findings of fact. According to those findings, Martin was employed as a part-time retail associate at the UPS Store at 2312 Far Hills Avenue in Oakwood for over two years. Martin's duties consisted of packing and shipping packages for customers and selling the store's services. He was one of four employees who performed similar services. Martin had no written employment agreement.
 {¶ 3} On April 1, 2004, the business was sold to Ost Mark, a corporation owned by Brian Parks and his wife. At that time, Parks had little experience in the business. Martin assisted Parks with the transition while continuing the same duties he had previously provided. Martin worked 20-30 hours per week.
 {¶ 4} While Martin worked for Ost Mark, he had at least two other sources of income: (1) a position as a part-time instructor at Sinclair Community College, teaching "The Art of Film: The History of Film," and (2) coordinating or selling "Dr. Creep" products. During the course of his employment with Ost Mark, Martin downloaded material relating to his film class and his Dr. Creep sideline on two computers at the store. He also created a site, entitled "Rick's Favorite Sites," on one of the computers.
 {¶ 5} Parks testified that he had told Martin in October 2004 to stop using company computers for his personal and business interests and to remove his downloads from the computers. Maria Tomas, another employee, provided a statement indicating that Parks had asked all employees in October 2004 not to use company computers for uses unrelated to the business. Tomas indicated that Martin continued to use the computers for his personal projects. Martin denied that he had been cautioned not to use the computers but stated that he had been told by Parks not to use the company computers for personal use unless there was nothing else left to be done or unless he used them after work hours. At that time, Parks did not give Martin a written reprimand or a written statement to cease and desist.
 {¶ 6} On December 5, 2004, Parks called Martin at his home and told him that he was terminating Martin's employment. The parties disagreed, however, as to the content of the rest of the conversation. Martin testified that Parks had said that he was fired because the other employees felt intimidated by him and that Parks would give him a severance package of two week's pay, the December 2004 bonus, and that, if Martin would not litigate, Parks would not contest any unemployment compensation claims. Martin's mother corroborated this version of the conversation. In contrast, Parks stated that he told Martin that he was fired because of his continued use of company computers for personal use and because of the multiple downloads on company computers. Parks indicated that he would give Martin his last week's pay and his November bonus and that he would consider giving him two weeks of severance pay in a few weeks. Parks denied saying that he would give Martin a December bonus or that he would not contest an unemployment claim if there was no litigation. Parks said that he would send Martin's personal belongings to him along with his last pay and November bonus on December 7, 2004.
 {¶ 7} On December 7, 2004, Martin received a check for his last week's pay and the November bonus, along with some of his personal belongings. He did not receive the severance or the December bonus. Parks later found additional personal items, and he sent them to Martin's attorney, who received a $19 COD charge. At Martin's request, his mother called Parks to ask whether Martin would be paid the severance pay. She stated that Parks responded "no" because Martin had been stealing from him. Martin's mother did not say what Parks alleged that Martin had been stealing.
 {¶ 8} After Martin was fired, Parks told the other employees and they complained that Martin had been spending time while on the job using company computers. Based on the complaints, Parks looked into the computers and found 30-40 gigabytes of downloaded material. After talking to his employees and checking the downloaded material, Parks decided that he would not give Martin any severance pay. Later, he contested Martin's unemployment compensation claim.
 {¶ 9} On December 8, 2004, Martin filed a claim in the Oakwood Municipal Court for wages and defamation of character. He sought severance pay of $408; a December bonus of $375; $30 in reimbursement for his coffee pot, which had broken in April 2004; $12.95 for a 2004 calendar; $19 for the COD charge for the delivery of his personal items to his attorney's office; and court costs. After a trial, the court awarded $427 to Martin, representing the severance pay and the COD charge. Ost Mark appeals from that judgment.
 {¶ 10} In its sole assignment of error, Ost Mark contends that the trial court erred in awarding severance pay. The company argues that the offer of severance pay was not supported by consideration and that Martin was not prejudiced by Parks' rescission of his offer to pay severance.
 {¶ 11} "A contract consists of an offer, an acceptance, and consideration. Without consideration, there can be no contract. Consideration consists of either a benefit to the promisor or a detriment to the promisee. To constitute consideration, the benefit or detriment must be `bargained for.' Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise. The benefit or detriment does not need to be great. In fact, a benefit need not even be actual, as in the nature of a profit, or be as economically valuable as whatever the promisor promises in exchange for the benefit; it need only be something regarded by the promisor as beneficial enough to induce his promise. Generally, therefore, a court will not inquire into the adequacy of consideration once it is found to exist.
 {¶ 12} "Whether there is consideration at all, however, is a proper question for a court. Gratuitous promises are not enforceable as contracts, because there is no consideration. A written gratuitous promise, even if it evidences intent by the promisor to be bound, is not a contract. Likewise, conditional gratuitous promises, which require the promisee to do something before the promised act or omission will take place, are not enforceable as contracts. While it is true, therefore, that courts generally do not inquire into the adequacy of consideration once it is found to exist, it must be determined whether any `consideration' was really bargained for. If it was not bargained for, it could not support a contract." Carlisle v.T R Excavating, Inc. (1997), 123 Ohio App.3d 277, 283-284,704 N.E.2d 39 (citations omitted).
 {¶ 13} Martin contends that "the trial court found, in essence, that it stood to reason that this offer [of severance] was made to resolve the differences between the parties and avoid any further action, whether by lawsuit or otherwise, by [Martin]." Martin's contention is belied by the analysis portion of the trial court's decision, which stated in part:
 {¶ 14} "Plaintiff contends that the severance package offered was in consideration of Plaintiff not filing a wrongful discharge suit. There was no indication at trial that either party had sought legal advice prior to the firing. The Court believes it is unlikely that Defendant was sophisticated enough to offer a severance package in exchange for a covenant not to sue. Neither party discussed a mutual written release. It is possible that Defendant mentioned litigation, because he testified that he was wary of Plaintiff because he had overheard him talk about other court cases in which he had been involved.
 {¶ 15} "The Court believes that Defendant said he would give Plaintiff two weeks severance pay. The statement that he would pay him a December 2004 bonus was not proved. * * *."
 {¶ 16} Upon review of the trial court's ruling, the court clearly found that Parks had offered to pay two weeks of severance pay. However, the court expressly rejected the assertion that the offer of severance pay was in consideration for Martin's agreement not to litigate. The court did not discuss other possible consideration by Martin, and there is no finding that Martin had provided consideration for the severance pay. In the absence of consideration, Parks' offer amounted to a gratuitous promise, and he was not contractually bound to pay severance to Martin. Moreover, nothing in the trial court's decision suggests that Martin relied on Parks' offer of severance pay such that he could recover under a quasi-contractual theory.
 {¶ 17} The assignment of error is sustained.
 {¶ 18} The judgment of the trial court is reversed as it relates to the award of severance pay.
BROGAN, J. and DONOVAN, J., concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio).