[Cite as *Evans v. Evans*, 2022-Ohio-2167.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| CHAD EVANS dba CEEW PROPERTIES, LLC | : | |
| | : | |
| | : | Appellate Case No. 2022-CA-5 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. CVF2100132 |
| v. | : | |
| | : | (Civil Appeal from |
| MICHELLE EVANS | : | Municipal Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of June, 2022.

. . . . . . . . . . .

CHARLES W. SLICER, SR., Atty. Reg. No. 0015555, 426 Patterson Road, Dayton, Ohio 45419
    Attorney for Plaintiff-Appellee

DAVID B. GRIESHOP, Atty. Reg. No. 0018547 & RICHARD HEMPFLING, Atty. Reg. No. 0029986, 10 North Ludlow Street, Suite 200, Dayton, Ohio 45402
    Attorneys for Defendant-Appellant

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Michelle Evans appeals from a judgment of the Fairborn Municipal Court in favor of her brother, Plaintiff-Appellee Chad Evans. For the reasons that follow, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

I. Facts and Course of Proceedings

{¶ 2} Rhonda Evans died on July 29, 2020. At the time of her death, Rhonda had four children, Chad, Michelle, Melanie, and Melinda, and an ex-husband, Michael Evans. Shortly after her passing, her four children and her ex-husband went to the Tobias Funeral Home to make arrangements for her funeral. Although the family had planned to use part of Rhonda's retirement benefits to pay for the funeral, that money was not available at the time that the funeral home demanded payment. Consequently, Chad paid the $10,585.44 funeral expense. Rhonda's retirement benefit of approximately $22,000 ultimately was paid to Michelle a few weeks later.

{¶ 3} Once Michelle received the retirement money, Chad sought reimbursement of the $10,585.44 funeral expense from her. Michelle refused to reimburse him. Chad then filed an action in Fairborn Municipal Court, alleging that Michelle had broken an oral contract to repay him for the funeral expenses. A trial was held before a magistrate. Michael, Chad, Melanie, and Michelle testified at the trial.

{¶ 4} Michael Evans, Rhonda's ex-husband, testified that Rhonda had told him prior to her death to use her retirement benefits to pay for the funeral and then give the

rest to her grandchildren. August 3, 2021 Trial Transcript, p. 7-8. According to Michael, when it came time to pay for the funeral expenses at the funeral home, the representative of the funeral home explained that they could not wait to be reimbursed from the retirement funds. Therefore, Chad wrote a check to the funeral home. *Id.* at 14-15. Michael explained the timing of when his daughter made the promise to repay his son:

A: Chad offered right away. He wrote the check out. He said Dad, stop worrying - - 'cause he was worried about me. I have a heart condition. And he was worried about me.

He said I got this, Dad. And [Michelle] turned around and said don't worry about it, I will pay it right back. She knows that.

Q: So Chad made the statement I - - I got this, Dad - - in other words - -

A: He made the statement I got the money right now, Michelle will pay me back, Dad, quit worrying. Michelle said it over and over and over, then she - - why does she wait at the funeral home to tell us she - - she took out a credit card to pay for this.

*Id.* at 15.

{¶ 5} Chad testified that when he and his family were at the funeral home, Michelle looked right at him and promised him that she would pay him back. *Id.* at 23. So he wrote the check to the funeral home. Michelle did not mention to Chad that she had a credit card she could have used to pay. Chad did not find out about the credit card until the next day. *Id.* at 26-27. Chad testified as follows regarding Michelle's promise to pay him back:

Q: Tell us what happened at that meeting.

A: So what happened was is we were meeting, putting it all together with the funeral guy. And we tried to use like - - my mom's SERS account 'cause she didn't have life insurance, to pay for the funeral and we couldn't at that point.

So we were all talking amongst ourself for the fun - - nobody was in there but us, the family members. And Michelle looked right at me and said I promise I'll pay you back, Chad - - 'cause I said I got the money, I can pay for this, guys, to where nobody has to worry and we can leave.

* * *

Q: Did Michelle offer to pay - - or offer to the family at any time prior to the burial to pay for the funeral bill?

A: No. We were all right there. Never. She didn't have the money. That's why I was like well, I can come up with it, 'cause we tried to use the SERS but the funeral home said we can't accept that, whoever the beneficiary is - - which I told my mom I trust my sister - - in hindsight 20/20, I wish I wouldn't have said that - - at that time, that we would use the SERS. We could not use that. No one mentioned anything. Everybody looked right at me, sir, and I said I can come up with it and - - as long as, Michelle, when you get that money, you pay me back - - I promise, Chad, when I get that money, you'll get paid back every dime. That was her exact words, sir.

*Id.* at 22-23, 30-31.

{¶ 6} Melanie, the sister of Chad and Michelle, also testified at the trial. According to Melanie, the funeral expenses were supposed to be paid with Rhonda's retirement money. *Id.* at 33. Melanie stated that "the money wasn't there yet so my brother offered to pay it that day. And he was supposed to get paid back from Michelle whenever the money came in." *Id.* Melanie noted that her father had asked Chad to attend the meeting at the funeral home because the retirement money was not available yet. After Chad paid for it, Michelle told Melanie and their father that she had a credit card that she could have used to pay for the expenses. *Id.* at 34. Michelle said that she would "make sure [Chad] got paid back." *Id.*

{¶ 7} Michelle testified that she was not part of any meeting at the funeral home involving paying for the funeral expenses. *Id.* at 40. According to Michelle, she was in the back of the funeral home with her mother's body when Chad was paying for the funeral expenses. *Id.* at 43-44. After identifying her mother's body, she went to her father and offered to pay for the expenses with her credit card, but her father explained that Chad had already paid. *Id.* at 47-48. Michelle testified that her father knew that she had the credit card and that they had previously talked about her paying for the expenses with her credit card. *Id.* Michelle stated that she did not know that she was the sole beneficiary of her mother's retirement funds until two weeks after the burial. *Id.* at 40. Over $22,000 in retirement funds was direct deposited into Michelle's bank account. *Id.* at 41.

{¶ 8} On September 7, 2021, the magistrate issued a decision finding, in pertinent part:

After [Rhonda's] death, the parties met at Tobias Funeral Home in Beavercreek, Ohio, to make arrangements for professional funeral and burial services. At that meeting, Rhonda's ex-husband, Mr. Mike Evans was worried about how this would be paid for when his son, Chad Evans said "quit worrying, I got this". After Chad Evans volunteered this, Mike Evans and Chad Evans both consistently and credibly testified that Michelle Evans stated she would reimburse Chad Evans once she received her deceased mother's State Teachers Retirement System "STRS" money; of which, she was expecting around $22,000. Additionally, Chad and Michelle's sister Melanie Evans stated she also heard this promise being made, out loud, in front of others at a separate time. The funeral home would not allow payment through STRS money that wasn't yet received. Therefore, Michelle Evans promised she would pay it right back to Chad Evans once it was received. * * * Conversely, Michelle Evans testified that at the meeting at Tobias she was back identifying the body when a conversation between her siblings and father happened. When she returned, she was informed Chad Evans had volunteered to pay for the arrangements. Michelle Evans denied that she ever promised to reimburse Chad Evans with her mother's STRS money and testified she paid for other miscellaneous items.

September 7, 2021 Magistrate's Decision, p. 1.

{¶ 9} Based on the evidence presented at the trial, the magistrate concluded that

there was an oral agreement between Michelle and Chad supported by "the surrounding circumstances and the testimony of three separate credible witnesses[.]" *Id.* at p. 2. Michelle filed objections to the Magistrate's Decision, a motion for preparation of the written transcript, and a motion for leave to supplement her objections. The trial court granted Michelle ten days from the date the transcript was filed to file any supplemental objections.

{¶ 10} The transcript was filed, but Michelle failed to file any supplemental objections. On December 9, 2021, the trial court issued its decision overruling Michelle's objections and granting judgment in favor of Chad. In particular, the court found that:

> [W]hile at the funeral home after [Chad] paid for the funeral, [Michelle] offered to reimburse him upon receiving the funds from SERS. She later advised her sister Melanie while they were paying for the plot for Rhonda that she would repay Chad. Although Chad was not present for this conversation, it corroborates the testimony of Mike Evans and Chad Evans that [Michelle] had offered to [Chad] to reimburse him once she received the funds. Text messages admitted into evidence support [Chad's] position that he wanted to be reimbursed and accepted this offer. Furthermore, [Michelle] has received the SERS funds and has not reimbursed [Chad]. Therefore, [Chad] has met the elements of a contract: offer, acceptance, consideration, and a manifestation of mutual assent, contractual capacity, and legality of consideration.

December 9, 2021 Decision, p. 1-2.

{¶ 11} The trial court entered judgment in favor of Chad in the amount of $10,585.44, plus interest and court costs. On December 16, 2021, Michelle filed a motion to vacate the judgment pursuant to Civ.R. 60, contending that she had in fact filed supplemental objections by facsimile. On December 21, 2021, the trial court declined to vacate the judgment but stayed the execution of the judgment pending the submission of Michelle's supplemental objections. The court stated that it "makes its ruling in the interest of justice, and its desire to decide matters based upon facts and law." Michelle filed her supplemental objections the following day. But Michelle filed a notice of appeal from the trial court's December 9, 2021 judgment before the trial court had an opportunity to review the supplemental objections.

II.   The Trial Court Erred In Relying On Past Consideration To Find The Existence of A Binding, Oral Contract

{¶ 12} Michelle raises the following assignment of error:

THE TRIAL COURT ERRED IN DETERMINING THAT A VALID, ENFORCEABLE CONTRACT EXISTED BETWEEN APPELLANT AND APPELLEE.

{¶ 13} " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' " *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting *Perlmuter Printing*

*Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976).

{¶ 14} Consideration may consist of either a detriment to the promisee or a benefit to the promisor. *Irwin v. Lombard Univ.*, 56 Ohio St. 9, 19, 46 N.E. 63 (1897). A benefit may consist of some right, interest, or profit accruing to the promisor, while a detriment may consist of some forbearance, loss, or responsibility given, suffered, or undertaken by the promisee. *Id.* at 20. The Supreme Court has noted that gratuitous promises are not enforceable as contracts. *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 17, citing *Carlisle v. T & R Excavating, Inc.*, 123 Ohio App.3d 277, 283-284, 704 N.E.2d 39 (9th Dist.1997). Generally, "past consideration cannot be a bargained-for benefit or detriment, since it has already occurred or accrued." *Carlisle v. T & R Excavating, Inc.*, 132 Ohio App.3d 277, 285, 704 N.E.2d 39 (9th Dist.1997).

{¶ 15} According to Michelle, the trial court erred in finding the existence of a binding, oral contract because "[i]t is clear that Chad unilaterally and voluntarily assumed the obligation of paying for the funeral <u>before</u> any purported promise by Michelle to reimburse him. In other words, his initial assumption of such obligation as to the funeral home was not contingent upon any subsequent promise of reimbursement by Michelle." (Emphasis sic.) Michelle's Appellate Brief, p. 5. Further, Michelle contends that there was not a bargained for mutual exchange of consideration, and past consideration is not sufficient to support a contract. Michelle's Reply Appellate Brief, p. 2.

{¶ 16} The record contains conflicting testimony about whether Chad made the payment for the funeral expenses before or after he received assurances from Michelle that she would reimburse him for his payment. Chad specifically testified that Michelle

made this promise before he made the payment. Michael presented similar testimony that his daughter's promise was made at the time that Chad was making the payment. Their sister Melanie stated that Michelle promised several times to pay Chad back, but she appeared to be referring to conversations with Michelle that occurred after Chad made the payment. Finally, Michelle testified that she was not present when Chad made the payment and was not even aware of her being a beneficiary on the retirement funds until two weeks later. But she did testify that she went to the funeral home intending to pay for the funeral expenses with her credit card.

{¶ 17} The magistrate found that there was an enforceable oral contract based upon "three credible witnesses." Clearly, the magistrate credited the testimony of Michael, Chad, and Melanie over the testimony of Michelle in making this finding. But neither the magistrate nor the trial court addressed the testimony of record that Michelle first made the promise to pay him back <u>before</u> he made the payment to the funeral home. Rather, the magistrate and the trial court focused exclusively on the testimony that Michelle made promises to reimburse after the payment had already been made. For example, the trial court stated that "while at the funeral home after [Chad] paid for the funeral, [Michelle] offered to reimburse him upon receiving the funds from SERS." Further, the trial court found that a subsequent conversation between Michelle and Melanie corroborated the testimony of Chad and Mike that Michelle "had offered to Plaintiff to reimburse him once she received the funds."

{¶ 18} The trial court found that Michelle's promise to reimburse made after Chad made the payment was sufficient to establish a binding contract. This was error,

because Chad cannot establish sufficient consideration for a binding contract by pointing to past consideration. But the trial court's erroneous reliance on past consideration does not necessarily mean that the trial court rejected Chad's testimony that Michelle also made her promise before he made his payment. Indeed, while it is clear that both the magistrate and the trial court apparently found Chad more credible than Michelle in making their factual determination that Michelle made a promise to repay Chad after he made the payment to the funeral home, it is unclear whether the magistrate and trial court also found credible Chad's testimony that Michelle also made a promise to reimburse Chad before he made the payment to the funeral home. Rather, neither the magistrate nor the trial court addressed the testimony of Chad and Mike that identified a promise by Michelle that occurred before Chad's payment.

{¶ 19} We will remand the cause to the trial court to make a finding, in the first instance, whether the preponderance of the evidence of record establishes that Michelle made a promise to reimburse Chad before he made the payment to the funeral home. In order to make this determination, the trial court will need to address the credibility of the witnesses. Further, the trial court will have an opportunity to consider Michelle's supplemental objections, which were pending before it when Michelle filed her notice of appeal. Ultimately, if the trial court finds that the preponderance of the evidence of record establishes that Michelle also made a promise to reimburse Chad before he made the payment to the funeral home, then the trial court should enter judgment in favor of Chad. However, if the trial court finds that the preponderance of the evidence of record does not establish that Michelle made a promise to reimburse Chad before he made the

payment to the funeral home, then the trial court should enter judgment in favor of Michelle.

III.     Conclusion

{¶ 20} Defendant-Appellant's sole assignment of error having been sustained, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Charles W. Slicer, Sr.
David B. Grieshop
Richard Hempfling
Hon. Beth W. Cappelli