OPINION
{¶ 1} Plaintiff-appellant Teresa A. Robbins appeals the decision of the Belmont County Common Pleas Court which stayed her discharge case and directed the case to arbitration as requested by defendant-appellee Country Club Retirement Center IV, Inc. Appellant asks this court to determine whether the arbitration agreement is unenforceable due to a lack of mutuality of obligations and unconscionability, whether the public policy exception to the employment at will doctrine can only be applied by a court, whether an employer's alleged intentional tort forfeits their status as an employer under an arbitration agreement, and whether the employer waived the right to arbitrate by engaging in pre-filing settlement negotiations. For the following reasons, the decision of the trial court staying the case pending arbitration is affirmed.
 STATEMENT OF THE CASE {¶ 2} Appellant was the medical records director at appellee's nursing home. On October 29, 2002, she reported off work due to her daughter's illness. The next day, she was terminated for absenteeism.
 {¶ 3} On October 28, 2003, appellant filed suit against her employer alleging three causes of action: breach of contract, retaliatory discharge, and intentional infliction of emotional distress. Her breach of contract claim dealt with her claim that she was verbally advised that her schedule would be flexible enough to deal with any single-parenting illness issues that should arise and with her claim that the employment handbook led her to believe that she would not be discharged for absenteeism without prior notice that her absenteeism was unacceptable.
 {¶ 4} Her retaliatory discharge claim revolved around her allegation that she was terminated in retaliation for cooperating with a government investigation. Specifically, the investigation revealed that the nursing home was understaffed and failed to provide prescribed medication to appellant's mother, who was a resident at the nursing home. She cited R.C. 3721.031 as evidence of Ohio's public policy regarding nursing home investigations and concluded that her discharge for assisting a government investigation fell under the public policy exception to the employment at will doctrine.
 {¶ 5} Appellant's third claim contended that the nursing home engaged in extreme and outrageous conduct by discharging her in retaliation and that she suffered severe emotional distress as a result. She claimed the nursing home acted willfully and wantonly, seeking compensatory and punitive damages.
 {¶ 6} The nursing home filed a motion to dismiss or, in the alternative, a motion to stay and compel the case into arbitration. They attached an "Employment Dispute Resolution Agreement" signed by appellant and requiring arbitration of all claims arising out of employment or termination of employment with certain exceptions not applicable herein.
 {¶ 7} Appellant responded by presenting arguments similar to those raised in the appeal herein. She later submitted an affidavit claiming that she does not remember signing the agreement and that she was given a series of documents to sign at the time of her hiring and was assured they were "routine" in nature and that she was required to sign them. She also claimed that she was never provided with a copy of the agreement after she signed it.
 {¶ 8} After hearing arguments on the matter, the court released an entry on July 6, 2004, staying the case pending arbitration under R.C.2711.02(B). Appellant filed timely notice of appeal as permitted under R.C. 2711.02(C). Her sole assignment of error complains that the trial court erred in compelling arbitration. She breaks this assignment of error into four issues, which we shall address separately below.
 ISSUE NUMBER ONE {¶ 9} The first issue presented, contends:
 {¶ 10} "Was it error for the court to enforce the arbitration agreement where the agreement lacked mutuality or, alternatively, where the agreement's terms were unconscionable?"
 {¶ 11} Appellant complains that the arbitration agreement lacks mutuality of obligation by quoting two different passages. At one point, she states that the agreement only binds the employee, pointing to the following passage:
 {¶ 12} "3. EXCLUSIVE, FINAL AND BINDING REMEDY. The DRP must be used by any employee seeking to resolve eligible employment related disputes to substitute for court action and any state administrative actions, as the exclusive, final and binding method to resolve the dispute. * * *."
 {¶ 13} Although this lone sentence refers only to the employee, appellant ended her quotation just before reaching one of the sentences binding the employer. That is, the remainder of the paragraph reads:
 {¶ 14} "Both the Employer and the Employee agree that neither party shall initiate or prosecute any lawsuit or administrative action which raises a dispute covered by this Agreement, except that employees remain entitled to pursue an administrative claim or charge under the federal discrimination laws or the National Labor Relations Act, even though they must also pursue the same claim or charge under this DRP [dispute resolution procedure]."
 {¶ 15} Moreover, the agreement's introduction provides, "the Employer and the Employee have entered into this Agreement to gain the mutual benefit of resolving employment-related disputes in a timely and impartial manner." Paragraph five provides that each party's promise to resolve disputes through arbitration, rather than the courts, is consideration for the other party's like promise. Furthermore, paragraph two of the agreement, entitled, "Covered disputes," begins:
 {¶ 16} "The parties agree to submit any and all disputes between the parties that arise from or relate to the Employee's employment, or termination of employment with the Employer, and that concern legally protected rights for which a court of administrative tribunal, in the absence of this Agreement, would be authorized by law to grant relief, to this employment dispute resolution procedure, including, but not limited to, claims for wages or other compensation; claims for breach of any contract or covenant, express or implied; tort claims; discrimination claims; claims for benefits, except as excluded below; and claims for violation of any federal, state or other governmental constitution, statute, ordinance or regulation."
 {¶ 17} From reading the remainder of the paragraph cited by appellant and the remainder of the agreement, it is clear that appellant took the one sentence (referring to the agreement being binding on the employee) out of context. The agreement does not solely bind the employee.
 {¶ 18} Appellant also supports her lack of mutuality argument by quoting the following portion of the agreement:
 {¶ 19} "2. COVERED DISPUTES: * * * This Agreement does not apply to the following: workers' compensation; unemployment compensation; claims by the Employer for injunctive relief and/or equitable relief for unfair competition and/or the use and/or disclosure of trade secrets or confidential information, or for unfair labor practices, such as picketing and strikes; and claims based upon an employee pension or other benefit plan, the terms of which contain an arbitration or other non-judicial dispute resolution procedure, in which case the provisions of such plan shall apply."
 {¶ 20} Appellant complains that the employer's promise to be bound is empty because they then exclude themselves under various scenarios. However, this paragraph in its entirety does not solely work to benefit the employer. First, the last clause in the disputed quote, based on benefit plans, does allow arbitration, just under the terms of the specific benefit plan rather than the terms of this more general arbitration agreement.
 {¶ 21} Second, workers' compensation and unemployment compensation are paid out of state funds and cannot be arbitrated in their entirety anyway. See, e.g., Youghiogheny Ohio Coal Co. v. Oszust (1986),23 Ohio St.3d 39, 40-41 (holding that arbitrator's decision of just cause for discharge does not affect unemployment compensation rights which exist pursuant to statute). "[T]he legislature has not provided that the determination as to eligibility for unemployment compensation may be made on the basis of private arrangements for the settlement of grievances." Id. at 41. The same concept applies to workers' compensation, another "statutory right independent of the arbitration process." Id. Thus, the employer did not give itself some special benefit in the portion of the exclusions dealing with workers' and unemployment compensation.
 {¶ 22} The real dispute lies in the language excluding from arbitration "claims by the Employer for injunctive relief and/or equitable relief for unfair competition and/or the use and/or disclosure of trade secrets or confidential information, or for unfair labor practices, such as picketing and strikes * * *." This clause does allow the employer to initiate a lawsuit rather than submit to arbitration in certain situations.
 {¶ 23} However, in all other situations, the employer must use the arbitration process. We note that even in the situations listed above, the lawsuit can seek only injunctive or equitable relief. The employer cannot get legal relief such as damages in the lawsuit.
 {¶ 24} In any case, merely because an arbitration agreement can be read as being more favorable to one party does not invalidate the agreement as lacking mutuality of obligation. Mutuality of obligation in contract law does not mean that each party must have the exact same obligations.
 {¶ 25} An agreement to arbitrate is binding and enforceable as is any other contract. Juhasz v. Constanzo (2001), 144 Ohio App.3d 756, 761. R.C. 2711.01(A). A contract is generally defined as a promise or set of promises actionable upon breach. Kostelnik v. Helper, 96 Ohio St.3d 1,2002-Ohio-2985, at ¶ 16. The three main elements of a contract are offer, acceptance, and consideration. Carlisle v. T R Excavating,Inc. (1997), 123 Ohio App.3d 277, 283. See, also, Kostelnik at ¶ 16 (adding contractual capacity, legality of consideration, and legality of object).
 {¶ 26} Consideration requires mutuality of obligation; it is a "bargained for" legal benefit or detriment. Kostelnik at ¶ 16. "Bargained for" means sought by the promisor in exchange for his promise or given by the promisee in exchange for that promise. Carlisle,123 Ohio App.3d at 283. Thus, in order for consideration to exist, there must be a benefit to the promisor or a detriment to the promisee. Id. Obviously, the obligations of each are not required to be identical. See, e.g., Id.
 {¶ 27} A gratuitous promise is not enforceable even if it is written and evidences an intent by the promisor to be bound. Id. "Without consideration, there can be no contract." Id. See, also, Ratchford v.Proprietors' Ins. Co. (1989), 47 Ohio St.3d 1, 8. "A contract that does not involve some exchange of consideration between the parties is not a contract at all." State v. Stanley, 7th Dist. No. 99CA55, 2002-Ohio-4372, at ¶ 20. See, also, Prendergast v. Snoeberger, 7th Dist. No. 02CA782,2003-Ohio-4742 (for further analysis applying the above rules of law). However, the benefit or detriment need not be great; the benefit or detriment need only be something regarded by the promisor as beneficial enough to induce his promise. Carlisle, 123 Ohio App.3d at 283.
 {¶ 28} Here, both parties agreed to arbitrate various matters. Additionally, the employer agreed to hire appellant based upon her agreement to arbitrate. There are benefits and detriments flowing between the parties. Nowhere in the definition of consideration is there a requirement that the benefits or detriments flowing to each party be exactly the same. Thus, consideration exists, and both parties are obligated. As such, appellant's mutuality of obligation argument is overruled.
 {¶ 29} Appellant's next argument under this issue presented is that the arbitration agreement is unconscionable. She argues that it is substantively unconscionable because the terms are unreasonable and unfair. In support of this argument she points to her argument above that the employer excluded certain actions from arbitration in its favor.
 {¶ 30} Appellant also argues that it is procedurally unconscionable because she had no meaningful choice when signing it, claiming there was no voluntary meeting of the minds. She states that she was falsely informed that the series of documents she was required to sign were "routine." She points to her affidavit and notes that the arbitration agreement was not explained to her and she did not read it.
 {¶ 31} Agreements to arbitrate are a favored method of settling disputes. Still, R.C. 2711.01(A) allows a trial court to invalidate an arbitration agreement on any equitable or legal ground that would render a contract to be unenforceable in general. One such equitable ground is unconscionability.
 {¶ 32} Unconscionability includes an absence of meaningful choice on the part of one of the parties plus contractual terms which unreasonably favor the other party. Lake Ridge Academy v. Carney (1993),66 Ohio St.3d 376, 383. "The crucial question is whether `each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print * * *?'" Id. It has been stated that the doctrine of unconscionability has two required prongs: a procedural prong, dealing with the making of the contract; and a substantive prong, dealing with the terms of the contract itself. Hurstv. Enterprise Title Agency, Inc. (2004), 157 Ohio App.3d 133, ¶ 21 (11th Dist.).
 {¶ 33} Procedural unconscionability does not result because an employee of the nursing home told her the paperwork which she needed to sign in order to be hired was "routine." Signing an arbitration agreement in order to be hired at the nursing home may very well be routine and within the industry standard. See ABM Farms, Inc. v. Woods (1998),81 Ohio St.3d 498, 503. Such a statement does not constitute a misrepresentation. See Id.
 {¶ 34} Here, there is no suggestion of coercion or duress. See LakeRidge, 66 Ohio St.3d at 383. Appellant had the opportunity to read the two-page, plainly worded, legible, and large-print arbitration agreement. See Id. Her own admissions establish that she decided not to read the documents. That she decided not to read the agreement does not relieve her of her obligations incurred by her signing. As the Supreme Court has observed:
 {¶ 35} "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written." McAdams v. McAdams (1909), 80 Ohio St. 232, 240-41, quotingUpton v. Tribilcock (1875), 91 U.S. 45, 50.
 {¶ 36} "The legal and common-sensical axiom that one must read what one signs survives this case." ABM Farms, 81 Ohio St.3d at 503. The law does not require the arbitration clause to be verbally explained to prospective employees or new hires. See Id. (where the Court found that an unsophisticated farmer should have read the contract to discover the arbitration clause).
 {¶ 37} Moreover, the contract "as a whole" is not unreasonable, nor are the terms sought to be enforced herein. See Id. (reviewing the reasonability of the contract as whole). There are no one-sided rules drafted as prerequisites for attaining a hearing; there is not a substantial fee required as a condition precedent to arbitration. SeeWilliams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 473. Further, the agreement is not "weighted heavily" against the weaker party. See Id. (also noting that an arbitration clause in a consumer credit agreement is subject to more suspicion than, for instance, a collective bargaining agreement or a brokerage agreement).
 {¶ 38} Merely because the employer need not arbitrate a claim for injunctive or equitable dealing with trade secrets, competition, or picketing and strikes does not make the arbitration agreement unreasonable. Appellant fails to realize that although she is required to arbitrate a claim arising out of her employment or termination, her employer must also rely on an arbitrator's decision on such matter, rather than have their defense heard by a jury. The employer could not unilaterally choose to take this matter out of arbitration, which would be a more apt example of unconscionability.
 {¶ 39} We also note that the allegedly unconscionable clause in the arbitration agreement is not relevant to the dispute herein. And, paragraph seven of the agreement provides, "[i]f any provision of this Agreement is adjudged to be void or unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement." Regardless, any unconscionability must be both procedural and substantive, and procedural unconscionability was disposed of infra.
 {¶ 40} Finally, we note that the case relied upon by appellant is not binding upon this court and is wholly distinguishable from the case before us. The Ninth District was confronted with an arbitration clause in a contract for the purchase of a motor vehicle. Eagle v. Fred MartinFord Motor Co. (2004), 157 Ohio App.3d 150. The appellate court found the arbitration agreement unconscionable based upon undisclosed fees that would make most arbitration cost-prohibitive. Id. at 169-171. The court noted that the arbitration provision was in fine print within the main document, that being the purchase agreement, and the dealership hurried the purchaser through the signature process. The court focused on the fact that the agreement limited various rights conferred by the Consumers Sales Practices Act and quoted a Black's Law Dictionary definition of an adhesion contract, which entails a form contract offered to consumers of goods and services. Id. at 173, 178. When noting that the car dealership failed to give the buyer a copy of the contract, the appellate court relied upon a statutory provision that requires the buyer to be given a copy of the purchase agreement for a motor vehicle sale. Id. at 180.
 {¶ 41} In our case, the arbitration agreement is not hidden within a larger agreement. Rather, the arbitration agreement here is its own two-page document signed by appellant. As aforementioned, the agreement here is not in fine print, and appellant was not hurried through some signature process. We have no allegations of cost-prohibitive arbitration fees. Moreover, this is not a consumer sales case as was Eagle. In the consumer sales arena, the buyer alleges that they would not have signed the agreement, and thus would not have purchased the goods or services, if they were aware of the arbitration agreement. Such rationale cannot be used in a case such as this, where one would have to argue that they would not have taken the job if they were aware of the arbitration agreement; yet, they are simultaneously asking for their job back. Finally, no statute requires a copy of the agreement to be given to the signatory. As such, Eagle is not applicable to the facts existing in this case. For all of the foregoing reasons, this issue is overruled.
 ISSUE NUMBER THREE {¶ 42} We shall address appellant's more general third issue prior to addressing his more specific second issue. The third issue presented alleges:
 {¶ 43} "Was it error for the court to enforce the arbitration agreement where the plaintiff's claims were employment-related, and, under ohio law, the defendant had by its conduct forfeited all of the rights and privileges of the employment relationship?"
 {¶ 44} Appellant claims that intentional torts, such as retaliatory discharge and intentional infliction of emotional distress, are not subject to the arbitration agreement because an employer's intentional tort against an employee is unrelated to the fact of employment. Appellant reasons that an intentional tort is a breach of the employment relationship causing the employer to forfeit his status as employer under the arbitration agreement. Appellant cites an Ohio Supreme Court case in support of his argument.
 {¶ 45} As appellee points out, the case appellant cites deals with how intentional torts bring a case outside of the workers' compensation system. Johnson v. BP Chem., Inc. (1999), 85 Ohio St.3d 298. Specifically, the Supreme Court held that any statute created to provide employers with immunity from liability for their intentional tortious conduct cannot withstand constitutional scrutiny. Id. at 304. The Court stated that the General Assembly shall not eliminate an employee's right to a common-law cause of action for an employer intentional tort. Id. The Court noted its prior reasoning that because the constitution only permits laws relating to death, injury, or occupational disease occasioned by the employment relationship, intentional tort suits by employees cannot be limited because an intentional tort takes place outside of the employment relationship. Id. at 320, citing Brady v. Safety-Kleen Corp.
(1991), 61 Ohio St.3d 624, 634. In a footnote relied upon by appellant, the Court continued to quote Brady as follows:
 {¶ 46} "Injuries resulting from an employer's intentional torts, even though committed at the workplace, * * * are totally unrelated to the fact of employment. When an employer intentionally harms his employee, that act effects a complete breach of the employment relationship, and for purposes of the legal remedy for such an injury, the two parties are not employer and employee, but intentional tortfeasor and victim. * * * The employer has forfeited his status as such and all the attendant protections fall away." Id. at 305 fn. 8, quoting Brady,61 Ohio St.3d at 634.
 {¶ 47} Here, an arbitration agreement states that it applies to torts. This would include intentional torts. The holding in Johnson
cannot be stretched to fit appellant's position. Johnson is not a case on point. There are no constitutional issues to contend with in this case. The arbitration agreement is not providing immunity or limiting recovery for intentional torts as the legislature attempted to do in Johnson andBrady. Rather, it is a typical arbitration agreement.
 {¶ 48} The agreement herein states that matters are arbitrable if they arise out of or relate to employment or termination of employment. We emphasize that even assuming arguendo portions of appellant's argument had merit in certain situations, it would not apply where the arbitration agreement specifically includes matters arising out of or relating to termination of employment and where the intentional tort alleged is basedsolely upon termination of employment, rather than assault for instance. See McGuffey v. LensCrafters, Inc. (2001), 141 Ohio App.3d 44 (where employee alleged assault and battery and where court noted that question of whether assaultive supervisor's acts fell within scope of employment is a question for arbitrator). Here, the intentional tort is the termination of employment.
 {¶ 49} Appellant also cites an appellate case where an injured employee sued for intentional tort and the employer's motion to stay the case based upon an arbitration agreement was denied. The Eleventh District held that the Supreme Court's reasoning in Johnson and Brady
prohibited arbitration agreements from including intentional torts since such tort is outside of the employment relationship. Scaglione v.Kraftmaid Cabinetry, Inc., 11th Dist. No. 2001-G-2364, 2002-Ohio-6917, at ¶ 18. They concluded that since the act took place outside the employment relationship, an agreement governing that relationship is not controlling in the area of employer intentional torts. Id.
 {¶ 50} However, the Supreme Court, in a merit decision without opinion, vacated the Eleventh District's Scaglione case.101 Ohio St.3d 1401, 2003-Ohio-7098. As such, Scaglione does not even exist as persuasive authority. In fact, the Supreme Court's decision implies that they disagree with the Eleventh's District's rationale. Appellant cites no other authority to support her position that arbitration agreements cannot attempt to include intentional torts as arbitrable matters. This issue is overruled.
 ISSUE NUMBER TWO {¶ 51} Appellant's second issue presented provides:
 {¶ 52} "Was it error for the court to enforce the arbitration agreement where the plaintiff's claim is founded upon public policy and arbitration would, in effect, frustrate that public policy?"
 {¶ 53} Appellant's main claim is that she was discharged in retaliation for cooperating with a state government investigation of a medication error regarding her mother, who was a resident at the nursing home. She also believes the nursing home erroneously presumed that she initiated this investigation.
 {¶ 54} Although she is an at-will employee, she alleged a public policy exception to the at-will doctrine. As evidence for this public policy, she pointed to R.C. 3721.031 dealing with the Director of Health's duties to enforce certain laws and rules relating to nursing homes.
 {¶ 55} In disputing the trial court's decision to stay her case pending arbitration, appellant claims that the public policy exception to the employment-at-will doctrine is something that must be created and enforced by the courts, not by arbitrators. She concludes that referral to arbitration deprives her of her tort remedy of retaliatory discharge in violation of public policy.
 {¶ 56} The Ohio Supreme Court has explained:
 {¶ 57} "'Clear public policy' sufficient to justify an exception to the employmentat-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments. As this court recently noted, `[w]hen the common law has been out of step with the times, and the legislature, for whatever reason, has not acted, we have undertaken to change the law, and rightfully so. After all, whopresides over the common law but the courts?' * * * Today we reaffirmGreeley and hold that an exception to the employment-at-will doctrine is justified where an employer has discharged his employee in contravention of a `sufficiently clear public policy.' The existence of such a publicpolicy may be discerned by the Ohio judiciary based on sources such as the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, and the common law.
 {¶ 58} "We have confidence that the courts of this state are capable of determining as a matter of law whether alleged grounds for a discharge, if true, violate a `clear public policy' justifying an exception to the common-law employment-at-will doctrine, thereby stating a claim. In making such determinations, courts should be mindful of our admonition in Greeley that an exception to the traditional doctrine of employment-at-will should be recognized only where the public policy alleged to have been violated is of equally serious import as the violation of a statute. * * *
 {¶ 59} "We note as well that a finding of a `sufficiently clear public policy' is only the first step in establishing a right to recover for the tort of wrongful discharge in violation of public policy. In cases where this required element of the tort is met, a plaintiff's right of recovery will depend upon proof of other required elements. Full development of the elements of the tort of wrongful discharge in violation of public policy in Ohio will result through litigation and resolution of futurecases, as it is through this means that the common law develops." Painterv. Graley (1994), 70 Ohio St.3d 377, 383-384 (Citations omitted) (Emphasis added).
 {¶ 60} It is language such as that emphasized supra that leads appellant to conclude that an arbitrator cannot be entrusted with the job of determining whether a sufficiently clear public policy exists. True, the Court's language often refers to the decision of courts. However, the Supreme Court was not confronted with the context of arbitration in that case. Thus, its language does not require an interpretation which excludes an arbitrator from determining whether a sufficiently clear public policy exists.
 {¶ 61} It should be noted here that R.C. 2711.10 and 2711.11 severely limit the court's review of an arbitrator's decision. It is often stated that an agreement to arbitrate carries with it the willingness to accept an arbitrator's decision regardless of whether it is factually or legally correct. Stehli v. Action Custom Homes, Inc. (2001), 144 Ohio App.3d 679,682 (11th Dist.), citing Goodyear Tire Rubber Co. v. Local UnionNo. 200 (1975), 42 Ohio St.2d 2d 516, 522.
 {¶ 62} Under this rationale, it seems irrelevant that it is a court who typically determines whether a public policy exception to the employment at-will doctrine should be created. Appellant waived any right to have a court decide the issue. By her own choice, i.e., by signing the arbitration agreement, she effectively submitted her claim to arbitration. The arbitrator's decision would only be creating the public policy decision in that case and such occurrence is the whole point of arbitration, avoiding the technicalities of the court system and allowing an arbitrator to engage in his or her own version of dispute resolution.
 {¶ 63} Contrary to appellant's argument, the Supreme Court's decision that child custody and visitation are not subject to arbitration does not shed light on the issue in the case before us. See Kelm v. Kelm (2001),92 Ohio St.3d 223 (noting that the courts allowing arbitration on this topic later use a de novo review, finding this to be a waste of time and resources, and reminding that the court is obligated to protect the child's best interests). Moreover, enforcement of the arbitration agreement does not "impinge upon a broad statutory scheme that invests sweeping powers in a state official" as was the case in the appellate decision relied upon by appellant for his conclusion that enforcement of the public policy exception to the at-will employment doctrine would itself violate public policy. See Benjamin v. Pipoly (2003),155 Ohio App.3d 171, 183 (dealing with the Superintendent of Insurance and liquidators of insolvent insurers). Here, there is no state official required as a party, there are no allegations that a non-signatory would be subject to arbitration, and there is no broad statutory scheme governing the proceedings of this case. This argument is overruled.
 ISSUE NUMBER FOUR {¶ 64} The fourth and final issue presented by appellant alleges:
 {¶ 65} "Was it error for the trial court to enforce the arbitration agreement where the defendant's presuit conduct clearly evidenced a waiver of the right to arbitrate?'
 {¶ 66} Appellant states that the employer waived the right to arbitrate due to its active involvement in pre-lawsuit settlement negotiations without requesting arbitration. The right to arbitrate can be waived if it is established that a party knew of their right to arbitrate but acted inconsistently with that right. Peterson v. CrockettConstr., Inc. (Dec. 7, 1999), 7th Dist. No. 99CO2, citing Harsco Corp.v. Crane Carrier Co. (1997), 122 Ohio App.3d 406, 414. As aforementioned, arbitration is a favored method of dispute resolution. Id.
 {¶ 67} Thus, waiver of the right to arbitration is not to be lightly inferred. Griffith v. Linton (1998), 130 Ohio App.3d 746, 751 (10th Dist.), citing Harsco, 122 Ohio App.3d at 415, and Campbell v.Automatic Die Prods. Co. (1959), 162 Ohio St. 321, 329. The heavy burden of proving waiver is on the party asserting such waiver.Griffith, 130 Ohio App.3d at 751.
 {¶ 68} The trial court examines the totality of the circumstances to determine whether a party waived its right to arbitrate. Peterson, 7th Dist. No. 99CO2. The issue is fact-driven, requiring an appellate review only for abuse of discretion. Id.
 {¶ 69} Courts have held that the plaintiff's filing of a lawsuit constitutes waiver if she knew of the right to arbitrate and the defendant can save its arbitration right by filing a motion to stay under R.C. 2711.11. Courts have also held that mere participation in a lawsuit may not constitute waiver, but active participation evincing an intent to acquiesce in the judicial process is waiver. Griffith,130 Ohio App.3d at 752. Engaging in limited discovery may not constitute waiver, but filing a motion for summary judgment does. Id. at 753.
 {¶ 70} After considering these examples, it is clear that the defendant's engaging in settlement negotiations prior to the filing of a lawsuit does not constitute waiver. Settlement negotiations are not synonymous with an attempt to avoid a lawsuit. One can also engage in settlement negotiations in an attempt to avoid binding arbitration and a possible award against them. See Harsco, 122 Ohio App.3d at 412 (noting that the parties tried to resolve their disagreement short of having to submit to arbitration and finding that neither party had an obligation to submit to arbitration at that pre-litigation point). Just because the plaintiff threatened to sue in those settlement negotiations does not convert the defendant's further settlement negotiations into a waiver of the right to arbitrate.
 {¶ 71} Upon the filing of the lawsuit in this case, the employer filed a responsive pleading raising the arbitration agreement as an affirmative defense and simultaneously filed a Civ.R. 12(B) motion to dismiss or to stay the proceedings pending arbitration. Thus, the employer did not waive their right to arbitration. This issue presented is without merit and this assignment of error is overruled.
 {¶ 72} For the foregoing reasons, the decision of the trial court staying the case pending arbitration is hereby affirmed.
Donofrio, P.J., concurs.
Waite, J., concurs.